No. 48,766

JAMES L. THOMAS, a Minor, By and Through ELDON L. THOMAS, Parent and Natural Guardian, *Appellee,* v. BOARD OF TOWNSHIP TRUSTEES OF SALEM TOWNSHIP, SEDGWICK COUNTY, KANSAS, *Appellant,* BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellee,* and KANSAS GAS AND ELECTRIC COMPANY, A Corporation, *Appellee.*

(582 P.2d 271)

Opinion filed July 21, 1978.

*Don Matlack,* of Matlack, Foote, Scott, Joseph, and Wilkinson, of Wichita, argued the cause and was on the brief for the appellant.

*Vincent L. Bogart,* of Wichita, argued the cause, and *Patrick L. Dougherty,* of Wichita, was with him on the brief for the appellee, James L. Thomas.

*R. K. Hollingsworth,* assistant county counselor, argued the cause and was on the brief for the appellee, Board of County Commissioners.

*John J. Healzer,* of Wichita, argued the cause, and *Ralph Foster,* of Wichita, was with him on the brief for the appellee, Kansas Gas and Electric Company.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover damages for personal injuries sustained in a collision between an automobile and a utility pole after the driver lost control of his car as the result of striking two chuckholes in a township road. The plaintiff, James Thomas, a minor, brought this action through his father and natural guardian, Eldon L. Thomas, against the Board of Township Trustees of Salem Township and the Board of County Commissioners of Sedgwick County for defects in the maintenance of the road and against the Kansas Gas and Electric Company for negligent placement of the utility pole. The case proceeded to trial and, at the close of the plaintiff's evidence, the trial court granted motions for a directed verdict in favor of Sedgwick county and Kansas Gas and Electric Company. The case was then submitted to the jury on the basis of the comparative fault of plaintiff and Salem Township.

The jury by its special verdict found that the accident was the fault of both the plaintiff and Salem Township, with forty-nine percent of the fault attributable to the plaintiff, James, and fifty-one percent attributable to the defendant township. Plaintiff's damages were determined to be in the total amount of $7500. The district court entered judgment in the amount of $3825 based upon the special verdict of the jury. Salem Township appeals from the judgment entered in favor of the plaintiff and also from the order of the trial court sustaining the motions for directed verdict of the defendant Sedgwick county. The plaintiff cross-appeals from the orders sustaining the motions for directed verdicts filed by Sedgwick county and the Kansas Gas and Electric Company.

The collision in this case occurred on the afternoon of September 8, 1974. Plaintiff was driving east along a sand and gravel road in Salem Township, Sedgwick County, Kansas. As the vehicle approached a bridge, the front wheels of the car struck two chuckholes, causing the plaintiff to be bounced out of the driver's seat and causing him to hit his head on the sun visor. Plaintiff lost control of the car; it then proceeded across the bridge, crashing into a utility pole on the opposite side. The evidence showed that the bridge was constructed so that two steel plates on the surface of the bridge allowed a single lane of traffic to proceed across the bridge. The chuckholes were located at the west end of the bridge at a point where the steel plates abutted the roadway. The bridge was not exactly in alignment with the roadway and was much narrower than the roadway. The utility pole which was used by Kansas Gas and Electric Company was located 133 feet east of the bridge and six feet north of the roadway. There were no traffic signs warning of a narrow bridge or rough roadway surface conditions.

The chuckholes were apparently caused by water runoff, since the ground on both sides of the road was higher than the roadway itself, causing water to collect in the roadway. The lack of drainage caused the chuckholes to form at the point where the steel plates came in contact with the unpaved road. Several witnesses testified concerning the size of the holes. According to the testimony the chuckholes were eighteen to twenty-two inches in diameter and three to six inches deep.

As a result of the collision, the plaintiff suffered bone fractures and serious dental injuries. This action was brought to recover damages against defendant Salem Township in Sedgwick county under K.S.A. 68-301, which provides in pertinent part as follows:

"68-301. Recovery of damages from county or township; notice of defects; action against two or more counties or townships. Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge, culvert or highway which by law, or agreement entered into pursuant to law, the county is obligated to maintain, and when any member of the board of county commissioners, the county engineer or superintendent of roads and bridges of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained; and in other cases such recovery may be from the township, where the trustee of such township shall have had like notice of such defect."

Plaintiff's theory of recovery, as stated in the pretrial order, was that Salem Township was liable for defects in the roadway which consisted of the following: (1) Potholes four to six inches deep and nineteen to twenty inches in diameter at the west end of the bridge; (2) improper alignment of the roadway with the bridge; and (3) no warning or reduced-speed signs. With respect to Sedgwick county, the plaintiff's theory was that defendant allowed the following defects to exist: (1) Bridge placement being off center by approximately one-half the width of the road; (2) steel traffic plates being loose and bent; and (3) no warning or reduced-speed signs. Plaintiff's theory as to defendant Kansas Gas and Electric Company was that it was negligent in placing the utility pole so close to the roadway as to be a traffic hazard. The defendants contended that the collision was the result of the plaintiff's own negligence in failing to keep a proper lookout, in driving at an excessive speed, in driving left of center, and in failing to use his seat belts.

As its first point, Salem Township contends that the plaintiff's evidence was not sufficient to establish a "defect" in the highway as required by K.S.A. 68-301. Whether the condition of a highway constitutes a "defect" so as to render a county or township liable for damages under K.S.A. 68-301 is a question of law in the first instance, to be determined by the court on a case-by-case basis. Where circumstances are such that an alleged defect cannot be excluded from the operation of the statute as a matter of law, it

presents a proper case for a jury to determine. See *Hampton v. State Highway Commission,* 209 Kan. 565, 498 P.2d 236 (1972), construing K.S.A. 68-419, a similar statute which governs liability for defects in a state highway.

In the present case the evidence established that the chuckholes were directly in line with the steel travel plates on the bridge, making the chuckholes unavoidable by any vehicle attempting to cross the bridge. The speed of plaintiff's vehicle was estimated at thirty miles per hour. The holes were not visible to the plaintiff as he approached the bridge. The size of the holes were estimated at eighteen to twenty-two inches in diameter with a depth of three to six inches. The holes were large enough for the large dual wheels of the local school bus to fall into and had been a problem for six to seven years prior to the collision. Although the holes were filled in periodically, they would reappear quickly. In light of the size of the holes, their ineffective repair, their direct alignment with the steel travel plates, and the inability of drivers to see the holes in time to reduce their speed, we have concluded that whether the chuckholes constituted a defect within the purview of K.S.A. 68-301 was an issue of fact to be determined by the jury.

Salem Township also maintains that there was not sufficient notice of the defect given to the township trustee as required by K.S.A. 68-301. The statute requires that recovery may be had from the township where the trustee of such township shall have had at least five days' notice of the defect prior to the time the damage was sustained. There was evidence presented at the trial that the holes in the road had existed for six or seven years prior to the collision. Two witnesses who lived in the area had discussed this condition with the township trustee at the scene six months prior to the collision and had also discussed the condition with the same trustee on many other occasions. The township road maintainer had been asked to increase his efforts to smooth out the holes not long before the accident. Mr. Lawless, the township trustee, testified that he traveled the road quite frequently himself, that he had been advised that the road needed repair on the west end of the bridge, and that the problem extended two or three feet from the bridge. We find this evidence sufficient to satisfy the statutory requirement that the township trustee had notice of the defect at least five days prior to the time plaintiff's injuries occurred.

The defendant township raises a number of other points which challenge the sufficiency of the evidence to support the special verdict of the jury finding that the defect in the township road was the cause of plaintiff's injuries. The township quarrels with the percentage of fault attributed to the respective parties. The township further challenges the correctness of the instructions given by the court defining what constitutes a defective highway. We have carefully reviewed the evidence and find that the special verdict of the jury is supported by the evidence. We also have concluded that the instructions, as given, fairly define the issues presented in the case.

The township next maintains that it was entitled to judgment as a matter of law, since the jury found the plaintiff James to be negligent in the operation of his motor vehicle and that forty-nine percent of the total fault for the accident was attributable to the negligence of plaintiff. The thrust of the township's position is that the plaintiff, having been found contributorily negligent, was barred as a matter of law from recovering in any action brought pursuant to K.S.A. 68-301. In support of its position, the township emphasizes the language of 68-301 which states in substance that any person who shall, *without contributing negligence on his part,* sustain damage by reason of any defective highway may recover such damage from the township. This contention raises an important question involving the application of the comparative negligence statute, K.S.A. 60-258a, to actions based upon highway defects brought under K.S.A. 68-301. In support of its position, counsel for the township argues that 60-258a is applicable only to actions brought on the theory of *negligence* and that actions brought under K.S.A. 68-301 are based not upon a theory of negligence, but upon failure of the township to conform to the statutory requirements for the construction and maintenance of a highway imposed by 68-301. Hence, it is argued, comparative negligence is not applicable in highway defect actions brought under 68-301.

The highway defect statutes, both K.S.A. 68-301 and 68-419, have long been interpreted as based upon the theory of strict statutory liability rather than upon a theory of common-law negligence. In *Lungstrum v. State Highway Commission,* 177 Kan. 57, 276 P.2d 346 (1954), it is stated in syllabus 4:

"Liability of the state under . . . 68-419 is not based on the general doctrine of negligence but is purely statutory. Negligence of the state in and of itself does not establish liability and proof of its due care is no defense if a defect actually exists. The only provision pertaining to negligence is that it requires a plaintiff to be free from negligence contributing to the accident."

See also *Payne v. State Highway Comm.,* 136 Kan. 561, 563, 16 P.2d 509 (1932) and *Arnold v. Coffey County Comm'rs.,* 131 Kan. 343, 291 Pac. 762 (1930). In *Arnold* the court stated that liability is determined by the result accomplished rather than by the diligence exercised:

". . . [I]n an action of this character, the simple question is: Was the bridge, culvert or highway defective? The question of how much or how little care had been exercised by the responsible county officials in the construction or maintenance of the bridge, culvert or highway in question is of but little or no consequence. If the result of their efforts is a defective bridge, culvert or highway, such defect makes the county liable if the other elements of liability are present. . . ." (p. 346.)

These cases, and a number of other cases taking a similar position, were decided long before the enactment of the comparative negligence statute, K.S.A. 60-258a, in 1974. K.S.A. 60-258a provides in pertinent part as follows:

"60-258a. **Contributory negligence as bar to recovery in civil actions abolished, when; award of damages based on comparative negligence; imputation of negligence, when; special verdicts and findings; joinder of parties; proportioned liability.** (*a*) The contributory negligence of any party in a civil action shall not bar such party . . . from recovering damages for negligence . . . if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, . . ."

The highway defect statute, 68-301, was originally passed in 1887. It was revised in 1923 to include the words "culvert or highway" in order to conform to prior decisions of this court. In 1947 the statute was revised once again, with changes in the language of the statute relating to liability for maintenance, persons who must have notice of the defect, and suits for defects in bridges, roads, or culverts maintained by more than one county or township. It is necessary for us to determine the impact of K.S.A. 60-258a on K.S.A. 68-301. It is a well-recognized rule of statutory construction that old statutes must be read in the light of later legislative enactments. The older statute must be harmonized with the newer; if a conflict exists, the older must be subordinated to the newer. (*In re Moseley's Estate,* 100 Kan. 495,

164 Pac. 1073 [1917].) Where there appears to be a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phrase of the subject, the specific statute will be favored over the general statute and controls. (*State v. Kliewer,* 210 Kan. 820, 504 P.2d 580 [1972].) In considering the relationship between the two statutes we must, of course, look to the intent of the legislature.

The same basic issue has been determined by the Supreme Court of Wisconsin. In *Morley v. Reedsburg,* 211 Wis. 504, 248 N.W. 431 (1933), the question was raised whether the Wisconsin comparative negligence statute should be applied to an action brought under the Wisconsin statute establishing liability for injuries caused by a defect in a highway. The defendant in *Morley* contended that the Wisconsin comparative negligence act was not applicable and that any contributory negligence whatsoever on the part of the plaintiff would entirely defeat his recovery. The defendant, in support of his position, argued that the Wisconsin comparative negligence statute was applicable only when the negligence of the defendant was the basis of the plaintiff's action and that an action to recover damages based on a highway defect did not rest upon negligence, but rather upon liability imposed by statute. The Supreme Court of Wisconsin rejected this argument, reasoning that the legal consequence of imposing liability upon municipalities for highway defects was simply to make the existence of a highway defect negligence as a matter of law in the same way that failure to comply with a safety statute constitutes negligence as a matter of law. The Wisconsin Supreme Court held the Wisconsin comparative negligence statute applicable.

The issue came again before the Wisconsin Supreme Court in *Trobaugh v. Milwaukee,* 265 Wis. 475, 61 N.W.2d 866 (1953). There a pedestrian brought an action against the city for injuries sustained in a fall on the sidewalk allegedly defective because of the accumulation of snow and ice. One of the questions raised in the case was whether the Wisconsin comparative negligence law was applicable to a cause of action based upon a statute which made a municipality liable for injuries suffered by reason of an accumulation of snow or ice on a highway where the accumulation existed for three weeks. The Wisconsin Supreme Court relied upon *Morley* and held that an action against the city based upon

the statutory liability was, in legal contemplation, an action for negligence and within the application of the comparative negligence statute. In a later Wisconsin case, *Nelson v. Hansen,* 10 Wis. 2d 107, 102 N.W.2d 251 (1960), the plaintiff brought an action based upon a Wisconsin statute which imposed strict liability on the owner of a dog. The statute deprived the dog of the first-bite defense recognized in most states and the owner's liability was stated in absolute terms, namely, "the owner shall be liable to the person so injured. . . ." The question was raised as to whether contributory negligence would bar recovery or whether the comparative negligence statute was to be applied. The Wisconsin Supreme Court held that the contributory negligence of the plaintiff was subject to the comparative negligence statute.

We have concluded that the rationale of the Wisconsin cases is sound. Although a number of Kansas cases have stated that, in an action brought under 68-301 to recover damages against a township or county for injuries resulting from a defective highway, the question of the negligence of the township or county is not material, in legal contemplation this simply means that, once a defect in a highway has been established, negligence exists as a matter of law and the only remaining issue to be determined as to liability is the contributory negligence of the plaintiff who suffered injuries from the defect.

There are many cases in Kansas which hold that the violation of a specific requirement of law contained in a statute or ordinance constitutes negligence *per se.* See for example *Kendrick v. Atchison, T. & S.F. Rld. Co.,* 182 Kan. 249, 320 P.2d 1061 (1958); *Noland v. Sears, Roebuck & Co.,* 207 Kan. 72, 483 P.2d 1029 (1971). The concept that a defect in a highway constitutes negligence *per se* is recognized in *Cunningham v. Clay Township,* 69 Kan. 373, 377, 76 Pac. 907 (1904). That case involved an action against a township for damages occasioned by the runaway of a team of mules, caused by their fright of a stone on the roadway. The action was based upon the statute enacted in 1887 making the township liable for defects in the highway. The statute was the forerunner of K.S.A. 68-301. In discussing the statute, the court said on page 377 of the opinion:

". . .The liability of the township is founded upon *neglect of the duty to keep the highway in repair.* But instead of the general requirement of ordinary diligence

in the discharge of such duty the statute substitutes a specific test. When injury is sustained by reason of a defective highway, if the township trustee has had five days' notice of the defect the township is liable, however great care the officers may have exercised; but if the trustee has had no such notice the township is not liable, however negligent the officers may have been. *The statute makes its own definition of actionable negligence.  .  .* ."

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Under these authorities the township is under the absolute duty of seeing that the highway is kept in reasonably good condition for travel—free from defects, but the question of what constitutes a defect is to be determined by the jury in view of all the circumstances of the case, so that the township is protected against immoderate requirements. Its liability is determined by the results accomplished rather than by the diligence exercised.  .  .  ." (pp. 377, 378.) (Emphasis supplied.)

K.S.A. 68-301 establishes a strict liability against a county or township in the event an actual defect exists in the highway. It is a concept based upon negligence *per se* arising from the failure of the township or county to maintain the highway in a condition safe for travel. K.S.A. 60-258a has adopted, as the policy of the state, the rule that the contributory negligence of an injured party shall not bar him from recovery but shall only serve to reduce his recovery based upon the comparative fault of all parties involved. We have concluded that the comparative negligence statute should be applied in actions brought under K.S.A. 68-301 to recover damages for injuries sustained as the result of highway defects. The conclusion which we have reached is also that stated by the committee on Pattern Jury Instructions of the Kansas Judicial Council in its comment under PIK 2d (Civil) 19.03:

"A question is raised as to the applicability of comparative negligence when a statute creating liability on a governmental unit specifically provides that the law of contributory negligence is controlling.

"The conclusion of the Committee is that inasmuch as the comparative negligence statute, K.S.A. 60-258a, is a later statute, comparative negligence, rather than contributory negligence, would apply in suits where the defendant is a governmental unit if the cause of action accrues after July 1, 1974. The comparative negligence statute by its terms is applicable in all negligence cases, and the conclusion of the Committee is that allowing defects to exist constitutes negligent conduct."

The defendant township next claims that the trial court erred in instructing the jury as to the legal effect of its answers to the special verdicts. Instruction No. 11, as given by the court, was based upon PIK 2d (Civil) 20.01, Comparative Negligence — Theory and Effect, and stated as follows:

"Instruction No. 11

"This case must be determined on the basis of comparative fault of the parties. In deciding the case you will need to know the meaning of the terms "negligence" and "fault."

"Negligence is the lack of ordinary care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing.

"As standards of ordinary care certain duties are imposed by law. It is for you to decide from the evidence whether or not any of the following duties imposed by law apply in this case and whether or not any have been violated. The violation of a duty is negligence.

"It is the duty of Salem Township to keep its roadways reasonably safe for travelers using the roadway.

"The duty of the Township to keep its roadways reasonably safe for travelers does not require it to guard the traveling public from such normal hazards as ordinary rough, uneven or bumpy sand and gravel roads, but where the bumps or chuck holes are so wide or deep as to constitute an unsafe and dangerous condition, not reasonably to be anticipated by users of the highway, the Township has the duty to eliminate the hazard or to warn the public of its presence. However, in order to render the Township liable for injuries resulting from a dangerous chuck hole or pothole in the roadway, the Township Trustee must have had notice or knowledge of the condition for a sufficient length of time to have taken precautions to guard against the injury and for a period of at least five (5) days.

"A party is at fault when he is negligent and his negligence caused or contributed to the event which brought about the injury or damages for which claim is made.

"It will be necessary for you to determine the percentage of fault of the parties. It also will be necessary for you to determine the amount of damages sustained by any party claiming damages.

"The laws of Kansas applicable to this case require me to reduce the amount of damages you have awarded to any party by the percentage of fault that you find, is attributable to that party.

"A party will be entitled to recover damages if his fault is less than 50% of the total fault of all parties. A party will not be entitled to recover damages, however, if his fault is 50% or more."

Specifically, the township's complaint is directed toward the last two paragraphs of the instruction. Defendant argues that the giving of these two paragraphs advising the jury as to the legal effect of its special verdict was prejudicial error. Defendant cites *Rohr v. Henderson,* 207 Kan. 123, 483 P.2d 1089 (1971), which holds that the design of the special verdict procedure is to obtain answers to questions of fact with the knowledge of the jury limited as to whether its findings will favor one side or the other. Defendant also relies on *Hubbard v. Havlik,* 213 Kan. 594, 518

P.2d 352 (1974), which states that the purpose of special questions to the jury is to ferret out the various facts separately in order to enable the court to apply the law and to guard against misapplication of the law by the jury. Defendant maintains that when the final two paragraphs of the instruction are given, they essentially convert what was a special verdict proceeding back into a general verdict deliberation.

The issue presented has caused a great deal of controversy in the various states which have adopted comparative negligence. The highest appellate courts of Arkansas, Colorado, and Wisconsin have held that the jury should not be informed of the effect of its percentage apportionment of fault as between the parties to the action. (*Argo v. Blackshear,* 242 Ark. 817, 416 S.W.2d 314 [1967]; *Mutual Auto Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 286 Wis. 6, 66 N.W.2d 697 [1954]; *Avery v. Wadlington,* 186 Colo. 158, 526 P.2d 295 [1974].) Subsequent to the decision in *Avery v. Wadlington,* supra, the Colorado legislature in 1976 enacted § 13-21-111 (4) C.R.S. 1973 (1976 Cum. Supp.) which made it incumbent upon the trial court in a comparative negligence case to instruct the jury on the effect of its finding as to the degree of negligence of each party. That statute effectively overruled the holding of the Colorado Supreme Court in *Avery.* (See *Loup-Miller v. Brauer & Assoc.—Rocky Mountain,* 572 P.2d 845 [Colo. App. 1977]; and *Appelgren v. Agri Chem, Inc.,* 562 P.2d 766 [Colo. App. 1977].)

Minnesota, by a rule of civil procedure (Minn. R. Civ. P. 4901), provides that, in actions involving its comparative negligence statute (Minn. Stat. § 604.01 [1971]), the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instruction or comment erroneous, misleading, or confusing to the jury. It should be noted that while this rule of civil procedure is restricted to comparative negligence actions, the Minnesota legislature, prior to the revision, enacted a broader statute which allows the jury to be similarly informed in all civil actions. (Minn. Stat. § 546.14 [1971].) Texas, by statute, did not go quite as far as Minnesota, but it nonetheless allows the jury to be indirectly informed as to the legal effects of its answers. (Tex. R. Civ. P. 277.) For a discussion of the Texas procedure, see

Cadena, *Comparative Negligence and the Special Verdict,* 5 St. Mary's L.J. 688 (1974). Oklahoma also permits the judge to instruct the jury as to the effect of its findings under that state's comparative negligence statute. (*Smith v. Gizzi,* 564 P.2d 1009 [Okla. 1977].)

The wide difference of opinion on this subject is manifested by judicial opinions with dissenting justices and numerous law review articles both for and against informing the jury of the legal effect of its answers to the special questions in comparative negligence cases. (See Smith, *Comparative Negligence Problems with the Special Verdict: Informing the Jury of the Legal Effects of Their Answers,* 10 Land & Water L. Rev. 199 [1975]; Guinn, *The Jury System and Special Verdicts,* 2 St. Mary's L.J. 175 [1970]; Wright, *The Use of Special Verdicts in Federal Court,* 38 F.R.D. 199, 200, note 10 [1966]; Flynn, *Comparative Negligence: The Debate,* 8 TRIAL May/June 1972, at 49; Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338 [1968]; Note, *Informing the Jury of the Legal Effect of Its Answers to Special Verdicts,* 43 Minn. L. Rev. 823 [1959]; Denton, *Informing A Jury of the Legal Effect of Its Answers,* 2 St. Mary's L.J. 1 [1970]; Note, *Informing the Jury of the Effect of Its Answers to Special Verdict Questions—The Minnesota Experience,* 58 Minn. L. Rev. 903 [1974]; Pierce, *Informing the Jury of the Legal Effect of Its Answers to Special Verdict Questions Under Kansas Comparative Negligence Law—A Reply to the Masses; A Case for the Minority View,* 16 Washburn L. J. 114 [1976].) The rationale behind the rule which prohibits informing the jury of the legal effect of its answers is that, if the jury does not know the legal effect of its findings, its determination will be logical and the defendant will be protected against verdicts based on sympathy rather than the facts. Critics of the rule point to at least three reasons why it should not be followed indiscriminately: (1) It is a senseless practice, since an intelligent juror will in most cases already have a good idea of what effect his answers will have on the ultimate verdict; (2) adherence to the rule can and has led juries to speculate unnecessarily as to the meaning of the law, resulting in mistaken verdicts that do not reflect the true intent of the jury; (3) the rule is an unwarranted intrusion on the traditional role of the jury to temper harsh rules of law and see that substantial justice is done between the parties.

Whether to permit the jury to be informed as to the legal effect of its answers in a comparative negligence case is essentially a policy decision. We have considered the pros and cons and have concluded that it is not error for a trial court in this state to inform the jury as to the legal effect of its answers in a comparative negligence case, where a general instruction is given informing the jury of the theory and legal effect of comparative negligence as is done in PIK 2d (Civil) 20.01. We believe the better rule should be one based not on distrust of juries, but rather one which recognizes that jurors collectively represent the conscience of the community and will do their best to follow the law as contained in the instructions of the court. It seems to us that, as a matter of policy, it is better to have the trial judge explain the operation of the law to the jury rather than to permit the jury to speculate as to the effect of its findings in a comparative negligence case. The rule which forbids the jury to be informed of the legal effect of its answers assumes that a jury should not concern itself with the practical effect of its apportionment of negligence and that a jury will operate more effectively in a vacuum. In our judgment, the rule ignores the reality that jurors often do concern themselves with the practical effects of their findings, and without being informed by the court, will undoubtedly speculate as to the result of their verdict. Under the Kansas comparative negligence statute, if a jury finds that the defendant and plaintiff are equally at fault, the plaintiff recovers nothing. Expecting the defendant to recover fifty percent of his damages, the unknowing jury may insure that he receives nothing. Furthermore, we believe that there is a real danger of a jury taking it upon itself to decrease the damage award by the percentage of plaintiff's negligence unless it is informed that the required reduction is a statutory duty of the trial court. Confusion in this regard has been pointed out by one author writing of the experiences of the state of Maine under its special verdict procedure. (Nixon, *The Actual Legislative Intent Behind New Hampshire's Comparative Negligence Statute,* N.H.B.J. 27, 29 [Fall, 1969].)

Comparative negligence is new to Kansas. We have not yet had extensive experience with jury trials in comparative negligence cases. If experience shows that justice has been subverted by the adoption of the rule which permits the trial court to inform the jury of the legal effect of its answers in a comparative negligence

case, we will not hesitate to change the rule. We hold in this case that the trial court did not err in giving Instruction No. 11 set forth in full above.

The only two remaining points raised on the appeal and cross-appeal concern the orders of the trial court granting the motions of Sedgwick county and Kansas Gas and Electric Company for a directed verdict. As to Sedgwick county, we agree with the trial court that there was no evidence presented in the case to show that any defect in the bridge caused the accident which resulted in the plaintiff's injuries. The defect was in the road, not in the bridge. We, likewise, hold that the trial court did not err in sustaining the motion for a directed verdict filed by Kansas Gas and Electric Company. There was no showing by the plaintiff that the placement of the utility pole was negligent or in violation of any statutory duty or standard. The trial court was correct in directing a verdict for defendant Kansas Gas and Electric Company.

The judgment of the district court is affirmed.