No. 53,293

GLYNN DEAN ALBERTSON, *Appellee,* v. VOLKSWAGENWERK AKTIENGE-
SELLSCHAFT, a foreign corporation; and VOLKSWAGEN OF
AMERICA, INC., a New Jersey corporation, *Appellants.*

(634 P.2d 1127)

Opinion filed October 23, 1981.

*Robert L. Howard,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Jerry G. Elliott* and *James D. Oliver,* of the same firm, were with him on the brief for the appellants.

*Gerald Michaud,* of Michaud, Cordry & Michaud, Chartered, of Wichita, argued the cause and *Richard D. Cordry,* of the same firm, was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This case was filed in the United States District Court for the District of Kansas and comes to this court by certification from that court under authority of the Uniform Certification of Questions of Law Act. K.S.A. 1980 Supp. 60-3201 *et seq.* The certifying court shows by its order it has jurisdiction of the parties and the subject matter of this suit and that the law of Kansas controls the substantive legal issues of the case. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 82 L.Ed. 1188, 58 S. Ct. 817 (1938). We accepted certification.

On December 7, 1975, Glynn Albertson, while driving a 1961 Volkswagen van in Wichita, collided with a vehicle owned and driven by Vernon Travis. Albertson sued Travis in the District Court of Sedgwick County. Under a comparative negligence instruction to find 100% of the fault for Albertson's injury, the jury determined his damages to be $275,000, with 40% of the

fault attributed to Albertson, and 60% to Travis. The judgment in the amount of $165,000 was entered against Travis and satisfied.

Albertson then filed suit against Volkswagen, manufacturer of the van, on November 18, 1975, in the U.S. District Court, alleging injuries and damages caused by a defective product but arising from the same collision with Travis which has been litigated in state court. Defendants contended the rules relating to comparative fault bar the suit against them and moved for summary judgment. At this juncture in the litigation, U.S. District Judge Frank Theis certified the following question to the Kansas Supreme Court:

"Having once obtained a satisfied judgment for a portion of his injuries in a comparative negligence action, may a plaintiff bring an action to recover damages for the remaining portion of his injuries against a defendant not a party to the first action, such second action being based on strict liability in tort?"

Judge Theis ruled collateral estoppel barred relitigation of the amount of Albertson's damages which were established at $275,000. Since Travis has already paid 60% or $165,000, plaintiff can recover a maximum of $110,000 in this action. Judge Theis then ruled collateral estoppel did not bar relitigation of the percentages of fault determined in the first action:

"In sum, this Court believes that the apportionment of negligence between drivers involved in a collision is not the same issue as the apportionment of causal fault among the same drivers and a strictly liable product manufacturer. Since the issues are not identical, plaintiff is not bound by the percentages of fault found in the prior action. Since the Court finds defendants' argument as to collateral estoppel to be without merit, it is clear that the issue previously discussed is controlling of the defendants' motion."

Since we deem the doctrine of comparative fault dispositive of the certified question, we need not respond to the collateral estoppel issue.

Albertson claims the injuries he suffered were enhanced and increased by design defects of the Volkswagen van under the theory of "second collision." He contends the design of the Volkswagen van was defective and dangerous in that the door handle would activate from the slightest contact; the door would open, and the occupant would be ejected. As a consequence, plaintiff suffered more substantial injuries than he would have in a properly designed crashworthy vehicle. He further argued the "second collision" theory was adopted in *Larsen v. General*

*Motors Corporation,* 391 F.2d 495, 502 (8th Cir. 1968), by the United States Court of Appeals, where the court held:

"We think the 'intended use' construction urged by General Motors is much too narrow and unrealistic. Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called 'second collision' of the passenger with the interior part of the automobile, all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable. The sole function of an automobile is not to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonable possible under the present state of the art."

Albertson contends by 1977 twenty-nine other jurisdictions had adopted the "second collision" theory as noted in *Huff v. White Motor Corp.,* 565 F.2d 104 (7th Cir. 1977). He argues that although Kansas has not specifically adopted the theory, it has defined a manufacturer's duty in design of products:

"A manufacturer has the duty to use reasonable care in the design of his products so that they will be reasonably safe for their intended use, including any emergencies of use which can reasonably be anticipated." *Garst v. General Motors Corporation,* 207 Kan. 2, Syl. ¶ 1, 484 P.2d 47 (1971).

It is Albertson's argument the holding in *Garst,* plus the adoption of strict liability in tort, *Brooks v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976), is tantamount to adoption of the "second collision" theory. This court has never had occasion to rule on the availability of the second collision theory in Kansas. The nature of the question before us does not require that we do so now.

The issues which do deserve our attention are best premised by a brief discussion of the relevant Kansas law. K.S.A. 60-258a presents a logical place to begin. Standing alone, the comparative negligence act does not require all potentially liable parties be sued in the same action. The joinder provision is K.S.A. 60-258a(c) which provides:

"On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose

causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action."

This section applies only to defendants and is permissive. As usual, significant gaps remain in the legislative fabric of the law which, of necessity, have been filled by court decisions declaring legislative intent. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978), presented the question of whether a plaintiff could avoid proportionate liability by suing only one of several tortfeasors. This court responded in the negative:

"[W]e conclude the intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries or damages even though one or more parties cannot be joined as a litigant or be held responsible for his or her proportionate fault." p. 207.

*Eurich v. Alkire,* 224 Kan. 236, 579 P.2d 1207 (1978), followed, and the court made sweeping statements regarding the legislative intent of the act. It pointed out that the comparative negligence act provided the machinery "for drawing all possible parties into a lawsuit to fully and finally litigate all issues and liability arising out of a single collision  .  .  .  ." p. 237. The court then concluded:

"[I]t was the intent of the legislature to fully litigate all causes of action and claims for damage arising out of any act of negligence subject to K.S.A. 60-258a. The provision for determining the percentage of causal negligence against each person involved in a negligence action contemplates that the rights and liabilities of each person should be determined in one action. Because all issues of liability are determined in one action there can be no reasonable argument that the issues should be relitigated. Likewise, there is no reasonable argument for the proposition that a claim for damage arising out of one collision or occurrence should not be presented at the time negligence is originally determined." p. 238.

The foregoing cases hold in a negligence action all parties to the occurence shall have their rights and liabilities determined in one action.

The stage was set for application of the comparative negligence concept to other actions based on other types of fault. In *Wilson v. Probst,* 224 Kan. 459, 581 P.2d 380 (1978), this court applied the comparative negligence statute to a highway defect case. *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 582 P.2d 271 (1978), produced a similar result. In both *Wilson* and *Thomas* the basis of liability was not common-law negligence, but rather statutorily created negligence per se. But for the application of

comparative negligence, the defense of contributory negligence would have applied. This court properly ruled the act applied.

*Wilson* and *Thomas* were followed by *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 610 P.2d 1107 (1980), where this court considered whether to apply comparative negligence to K.S.A. 21-4209, which prohibits the sale of explosives to persons under eighteen years of age. This case also involved negligence per se where contributory negligence would be a valid defense in the absence of application of comparative negligence. The court held comparative negligence applied, barring the defense of contributory negligence or an "analogous defense." It is argued this broadened the act beyond the intent of the legislature.

*Kennedy v. City of Sawyer,* 228 Kan. 439, 452, 618 P.2d 788 (1980), came next. This court noted its decisions in *Wilson, Thomas* and *Arredondo* had applied comparative negligence

"to occurrences which previously were considered beyond the ordinary tort negligence situation.

"After considering the foregoing matters we agree with the Court of Appeals that the doctrine of comparative fault or comparative causation should be and is applicable to both strict liability claims and to those claims based on implied warranty in products liability cases."

Albertson urges *Kennedy v. City of Sawyer* applied only comparative fault principles, and not the comparative negligence statute, to actions in strict liability. We can conceive no stronger or more definitive statement the court could have made to adopt the doctrine of comparative fault than the foregoing statement made in *Kennedy.* Albertson relies on the court's use of the words "principles of comparative negligence" at various times in *Kennedy.* That phrase was necessary, however, because K.S.A. 60-258a speaks only of "negligence." In *Kennedy* we judicially adopted the system statutorily set out in K.S.A. 60-258a and applied it to actions in strict liability.

Albertson contends the application of the principles of comparative negligence to strict liability actions will place an unfair and burdensome hardship on all plaintiffs in products liability cases, effectively nullifying this court's opinion in *Brooks v. Dietz,* 218 Kan. 698. Plaintiff cites Justice Mosk's dissent in *Daly v. General Motors Corp.* 20 Cal. 3d 725, 764, 144 Cal. Rptr. 380, 575 P.2d 1162 (1978), where the Supreme Court of California held principles of comparative negligence applied to strict liability actions. Justice Mosk stated:

"In sum, I am convinced that since the negligence of the defendant is irrelevant in products liability cases, the negligence — call it contributory or comparative — of the plaintiff is also irrelevant. The majority, by considering the comparative negligence of a plaintiff in an action in which defendant's negligence is not an issue, apply an untenable double standard. Their error is grieviously unsettling to the law of torts. More significantly, this decision seriously erodes the pattern of the law which up to now reflected a healthy concern for consumers victimized by defective products placed on the market in this mechanized age through the dynamics of mass production, national and international distribution, and psychologically subtle marketing."

Albertson thus claims it is unjust to evaluate the plaintiff's negligence when the defendant is being judged on strict liability in tort. He argues negligence cannot be compared to strict liability in tort since negligence is based on fault and strict liability imposes absolute liability, thereby eliminating comparison. We reject that argument and hold strict liability in tort does have a fault basis, therefore subjecting it to comparison with other fault concepts. This position serves the ideal of judicial neutrality and will prevent a multiplicity of suits.

In answering the actual question presented, we are mindful of the proliferation of problems prompted by the enactment of the comparative negligence law (K.S.A. 60-258a), and the recognition of the doctrine of comparative fault by this court. Within the context of this case, several of those problems are cited by Judge Theis in his memorandum:

"This Court is bound by the *Eurich v. Alkire* decision. On the other hand, as this Court has stated previously, *Eurich* is not precisely on point. That case involved the effect of failure to litigate claims between actual parties, while the present case involves the effect of failure to join additional parties. Nevertheless, the Kansas Supreme Court found in *Eurich* a legislative intent to fully and finally litigate the rights and liabilities of all persons in one action. It would appear that the Kansas Supreme Court's reading of legislative intent, which was sufficient to override the express terms of K.S.A. 60-213(g), might also be sufficient to require the plaintiff to forfeit any rights against an unjoined tort-feasor. On the other hand, there may be considerations applicable to joinder that were not applicable to cross-claims.

"The Kansas Supreme Court stated in *Eurich* that there is no reasonable argument for the proposition that a claim for damage arising out of one collision or occurrence should not be presented at the time negligence is originally determined. As to cross-claims between formally joined parties, this is certainly true (although K.S.A. 60-123(g) would appear to make such a presentation permissive, not mandatory). On the other hand, there may be reasons why a party was not joined and a claim not presented in a particular action. First, in a products liability action some potential defendants may not be subject to suit in the state

where injuries occured. See *World-Wide Volkswagen Corp. v. Woodson,* 100 S.Ct. 559 (1980). Second, federal diversity rules prevent a claim against a non-diverse party if the action is brought in federal court. While the requirements of federal diversity require forfeiture of claims against a non-diverse party in the federal action, *Greenwood,* supra, no federal rule prohibits a second suit in state court against the non-diverse party. Third, a plaintiff may not even be aware of the full extent of who may be liable until an action is commenced and discovery begun."

Nevertheless, we feel constrained under the doctrine of case and controversy *(NEA-Topeka, Inc. v. U.S.D. No. 501,* 227 Kan. 529, 531, 608 P.2d 920 [1980]), to restrict our response to the question certified.

Albertson's injuries were allegedly caused by a combination of the collision and the lack of crashworthiness of the vehicle in which he rode. They resulted from one occurrence. Albertson's total injuries were evaluated by the jury and determined to be $275,000. Albertson was found responsible for 40% of his own injuries; 60% were caused by others. Albertson was paid for all of his injuries caused by the liability of others. The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by that decision. Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability.

Under the facts of this case, we answer the certified question in the negative.

IT IS BY THE COURT SO ORDERED THIS 23RD DAY OF OCTOBER, 1981.