**Mary Catherine SHINKLE, et al., Plaintiffs,**

v.

**UNION CITY BODY COMPANY, et al., Defendants.**

Civ. A. No. 79–2268.

United States District Court, D. Kansas.

June 2, 1982.

632

Robert W. Green, Ottawa, Kan., Mark P. Robinson, Jr., Newport Beach, Cal., for plaintiffs.

Bill E. Fabian and John Jurcyk, Jr., McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant Union City.

Thomas O. Baker and Thomas N. Sterchi, Watson, Ess, Marshall & Enggas, Kansas City, Mo., Barton Brown, of Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for defendant General Motors.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This is a products liability action arising from the death of Victor A. Shinkle in a

collision on April 4, 1979, in Miami County, Kansas, between a delivery van, driven by the decedent, and a 1972 Chevrolet, driven by Thomas A. Greving. A separate action commenced by plaintiffs against Greving in the District Court of Miami County, Kansas, was settled following a hearing before that court. A journal entry filed October 28, 1981, reflects that plaintiffs settled their claim against Greving in the sum of $15,-000.00, but that no determination of the proportion of causal responsibility for the collision was made by the court or a jury at that time.

In the instant action plaintiffs assert causes of action based upon the Kansas wrongful death statute, K.S.A. §§ 60–1901 to 1905 and the Kansas survival statute, K.S.A. §§ 60–1801 and 1802, alleging that the death of Victor Shinkle resulted from the negligence of defendants Union City Body Company, Inc. (hereinafter Union City), and General Motors Corporation (hereinafter GMC). Defendants in this action have both filed motions for summary judgment. Although their arguments vary somewhat, both defendants argue the following three basic grounds in support of their motions: (1) resolution of the case in Miami County, Kansas, bars further proceedings in this court; (2) the wrongful death claim asserted by plaintiff is improper; (3) a survival action has not been properly stated in Count III because it is not brought on behalf of decedent's estate. We will deal with these three grounds separately.

I. *Miami County Settlement.*

■ Defendants argue that because plaintiff did not reserve its rights against these defendants, the settlement reached in the Miami County case bars further proceedings in this action. After reviewing the records presented by the parties, we conclude that the judgment entered October 16, 1981, was an attorney-drafted product of a negotiated settlement formalized because of the necessity for supervising the distribution of funds to the minor heirs of the decedent. In the Journal Entry filed October 28, 1981, at page 2, the court ordered that "these judgments shall be a bar to any other causes of actions these plaintiffs may have against the defendant, Thomas J. Greving, and shall be a valid defense to any other action commenced against Thomas J. Greving as a result of the accident described above." The fact that the settlement of the Miami County case against Thomas Greving was resolved through a judgment and journal entry does not in our opinion preclude the continuation of this action. The effect of a settlement contract between two litigants should be determined by scrutinizing the intent of the parties to the instrument and not by what the document is called. *Stueve v. American Honda Motors Co., Inc.,* 457 F.Supp. 740, 746 (D.Kan.1978).

■ In *Stueve* the wife and administratrix of the estate of Frederick Stueve brought an action for wrongful death and survivorship, alleging that his death resulted from burns received when his motorcycle caught fire after colliding with an automobile. The defending distributor and manufacturer of the motorcycle argued that a prior settlement with and resulting judgment against the driver of the automobile in state court barred a subsequent products liability action. Judge Rogers found that the journal entry reflecting the negotiated settlement was "formalized principally because of the necessity for supervised distribution to minor heirs of the deceased." 457 F.Supp. at 745. After extensively reviewing Kansas law, Judge Rogers concluded that "in the absence of any evidence produced by either party on the question of intent, and when the document is silent upon the matter, the Kansas rule is that other parties are 'presumed' not released." 457 F.Supp. at 747. Thus, defendants have the burden of showing that the settlement with and subsequent judgment against Thomas Greving was intended to release the defendants here even though no express release or reservation of rights concerning these defendants is found.

The reasoning behind the common law rule that the release of one joint tort-feasor

releases all was undermined by the adoption of comparative negligence in Kansas, K.S.A. 60–258a, and decisions by the Kansas courts construing this statute. *Geier v. Wikel,* 4 Kan.App.2d 188, 603 P.2d 1028 (1979). Thus, the Kansas Supreme Court in *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978), abolished the concept of joint and several liability between joint tort-feasors in comparative negligence actions, concluding that the legislature's intent and purpose in adopting K.S.A. 60–258a, "was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault." 224 Kan. at 207, 580 P.2d 867. In light of the holding in *Brown,* Judge Rogers in *Stueve* stated:

> It follows that since a given defendant in a case governed by K.S.A. 60–258a can be held liable in any event only for that percentage of injury attributable to his fault, a release of that defendant cannot inure to the benefit of potential co-defendants. Under former rules of joint liability, to release one defendant unconditionally may have been viewed as relinquishment of the right to recover one's entire damages from a party liable, and thus as extinguishing the action as to potential defendants who stand as third-party beneficiaries to the release. This cannot be the case in an action under K.S.A. 60–258a.

457 F.Supp. at 748–49.

This interpretation of Kansas law was quoted with approval in *Geier v. Wikel,* 4 Kan.App.2d 188, 603 P.2d 1028 (1979), in which the court held that the unconditional release of one tort-feasor did not release all joint tort-feasors. Plaintiff Geier, who was injured when an automobile driven by Wikel struck a freight train, executed an unconditional release in favor of the owner and operator of the train and then sued Wikel. The court rejected defendant Wikel's argument that the settlement and release of the railroad barred plaintiff's action against him under the Kansas Comparative Negligence Act.

The Kansas Supreme Court in *Kennedy v. City of Sawyer,* 228 Kan. 439, 453–54, 618 P.2d 788 (1980), contrasted the limited release in *Geier* with a general release that settles the entire liability of a plaintiff's damages. In *Kennedy* the court found that "the settlement and release given covers all parties who may have contributed in any way to the damages." 228 Kan. at 453, 618 P.2d 788. Quoting from the release, the court noted that the plain and unambiguous wording of the release given by the plaintiffs did:

> [R]elease and forever discharge the said *defendants and all other parties, firms, and corporations, both known and unknown,* of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries both to person or property resulting, or to result, *from an accident which occurred on or about the 17th day of July, 1975,* near Sawyer, Kansas. Emphasis supplied.

228 Kan. at 453, 618 P.2d 788.

Thus, the plain wording of this release and the dismissal with prejudice of the Kennedy's action relieved all third-party defendants of possible future liability to the Kennedys. On the other hand, the release in *Wikel* contained no intention of releasing more than the proportionate liability of the railway company. Since the release did not relate to other possible tort-feasors either by name or by general description, the court concluded that "the intent shown by the wording in the release was to limit the discharge of liability to the railroad." 228 Kan. at 453–54, 618 P.2d 788. Although the supreme court has recently disapproved broad language in *Kennedy* suggesting that a defendant can enlarge the liability of other defendants through joinder pursuant to K.S.A. 60–258a(c), that decision expressly states that it "in no way jeopardizes settlement of actions" which are favored in the

law. *Ellis v. Union Pacific Railroad Co.,* 231 Kan. 182 at 192, 643 P.2d 158 at 166 (1982).

■ Based upon the facts before us, we find that plaintiff's settlement with and subsequent judgment against Greving in Miami County, Kansas, did not release more than the proportionate liability of Greving, the driver of the other automobile involved in the accident resulting in plaintiff's decedent's death. Thus, that release does not bar the present proceeding.

We must next determine whether the judgment in Miami County requires dismissal of the present action as a result of the decision of the Kansas Supreme Court in *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 634 P.2d 1127 (1981). That decision resulted from certification of the following question by Judge Frank Theis of this court:

Having once obtained a satisfied judgment for a portion of his injuries in a comparative negligence action, may a plaintiff bring an action to recover damages for the remaining portion of his injuries against a defendant not a party to the first action, such second action being based on strict liability in tort? 230 Kan. at 369, 634 P.2d 1127.

The facts in *Albertson* are similar to those before us. Plaintiff Albertson was injured when the vehicle he was driving collided with a vehicle owned and operated by Vernon Travis. Albertson sued Travis in the District Court of Sedgwick County, Kansas, and a jury determined Albertson's damages to be $275,000 with forty percent of the fault attributed to Albertson and sixty percent to Travis. Thus a judgment in the amount of $165,000 was entered against Travis and was satisfied. Albertson then filed suit in this court against the manufacturer of his vehicle, alleging injuries and damages arising from the same collision. The basis of the suit was strict liability in tort. The Kansas Supreme Court noted that the system statutorily set out in the Kansas comparative negligence statute, K.S.A. 60–258a, was judicially adopted and applied in *Kennedy* to actions in strict lia-

bility. The court reasoned that strict liability in tort has a fault basis which subjects it to comparison with other fault concepts and that, "[t]his position serves the ideal of judicial neutrality and will prevent a multiplicity of suits." 230 Kan. at 373, 634 P.2d 1127. Recognizing the proliferation of problems resulting from the enactment of the Kansas comparative negligence law, the court held "under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties for determination of fault escape liability." 230 Kan. at 374, 634 P.2d 1127. In reaching its decision the court observed that Albertson's injuries, which were allegedly caused by a combination of the collision and the lack of crashworthiness of the vehicle he drove, resulted from one occurrence. It further emphasized that a jury evaluated and determined the amount of Albertson's injuries and the proportion of responsibility to be assessed between Albertson and others. This jury determined Albertson's total injuries warranted $275,-000 damages and further found that Albertson was responsible for forty percent of these injuries while others were responsible for sixty percent. Since judgment against Travis had been entered and satisfied, the court concluded, "Albertson was paid for all of his injuries caused by the liability of others. The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by the decision."

After careful consideration we have concluded that the facts of the instant case are distinguishable from those in *Albertson* and that this action is not barred by the settlement of the Miami County case. The primary distinction is that the judgment in Miami County was the result of a settlement, not a jury trial. Thus, no fact finder has determined the total injuries suffered by the plaintiffs nor the proportionate causal responsibilities of those who may have contributed to the injuries. We believe our decision is consistent with the policy of

Kansas courts to encourage settlement of litigation. Failure to name Greving as a defendant before this court is irrelevant since the defendants will be permitted to have his percentage of fault determined at the time of trial. The defendants in this action will be relieved of any proportion of causal responsibility assessed to Greving. As the Kansas Court of Appeals noted in *Geier v. Wikel*:

> An injured party whose claim for damages is exclusively subject to the Kansas comparative negligence statute may now settle with any person or entity whose fault may have contributed to the injuries without that settlement in any way affecting his or her right to recover from any other party liable under the act. The injured party is entitled to keep the advantage of his or her bargaining, just as he or she must live with an inadequate settlement should the jury determine larger damages or a larger proportion of fault than the injured party anticipated when the settlement was reached. It follows that the type of release given will have no effect on any party not specifically named in the instrument.
>
> 4 Kan.App.2d at 190, 603 P.2d 1028.

## II. *Wrongful Death Claim.*

Union City argues that plaintiffs' claim for wrongful death in Count II improperly includes within the definition of pecuniary losses the loss of future earnings of Victor A. Shinkle. A statutory limitation on damages for wrongful death is found in the Kansas Wrongful Death Act at K.S.A. 60–1903, which reads in full as follows:

> 60–1903. Amount of Damages. In any such action, the court or jury may award such damages as are found to be fair and just under all the facts and circumstances, but the damages, other than pecuniary loss sustained by an heir at law, cannot exceed in the aggregate the sum of Twenty-Five Thousand Dollars ($25,000) and costs.

Thus this statute establishes a ceiling on damages "other than pecuniary loss." The question presented by Union City is wheth-er lost wages should be included within the definition of pecuniary losses. More simply the issue presented is what is, and what is not, "pecuniary loss."

■ Facing a similar question in *Coleman v. Yellow Freight System, Inc., et al.,* 78–4245 (D.Kan., 5/17/79) *(unpublished)*, Judge Rogers examined the history of wrongful death in Kansas. Due to the lack of legislative history concerning the present version of § 1903, which was adopted in 1975, Judge Rogers examined the statute in effect between 1947 and 1975, under which no distinction between "pecuniary" and "non-pecuniary" damages was made. He also reviewed pre-1947 Kansas cases, when the distinction between "pecuniary" and "non-pecuniary" losses was ingrained in Kansas law. The following discussion from this scholarly opinion, a copy of which we have attached for the benefit of the attorneys in this case, summarizes the issue before us and clearly shows that Union City's argument is meritless.

> It has been presumed that the aggregate limitation on *all* wrongful death damages prior to 1975 was intended to preclude a jury from awarding an excessive amount of damages out of sympathy to a decedent's family. This approach, however, ignored the fact provable damages in lost wages alone might far exceed the statutory limitation. It appears that the 1975 amendment was an attempt to reconcile these competing interests: concern for the defendant that astronomical verdicts not be awarded out of sympathy for the irreplaceable losses suffered by the heirs, and concern for the heirs that the aggregate limitation might not reasonably compensate them for the financial contributions they could reasonably expect from the decedent. *See, Benton v. Union Pacific Railroad Co.,* 430 F.Supp. 1380, 1385–86 (D.Kan.1977). The resurrection of the "pecuniary damage" standard, therefore, must be construed to encompass only contributions of the decedent financial in nature, or which can with reasonable accuracy be stated in financial terms. As noted above, the serv-

ices rendered by a family member without compensation such as housekeeping, cooking, home maintenance, etc., would fall naturally into this category since they can be obtained from others in exchange for financial outlay. Similarly, the more mechanical and perfunctory aspects of parental care may be the subject of private contracts with third persons, the expense of which may be determined with some reasonable degree of specificity. We believe this is a proper formulation of the test to be applied to determine the "pecuniary" nature of damages under the present version of K.S.A. 60–1903: *to what extent does the item of damage claimed lend itself to expression in terms of financial benefits or advantage lost, or financial outlay made necessary, by the death of the family member?*
*Coleman*, slip op. at 6–7.

■ GMC argues that Counts I and II brought under the Kansas Wrongful Death Act were exhausted by plaintiffs' suit in Miami County, Kansas, and that a subsequent action for the same death is barred. We concluded earlier in this order that the settlement and judgment of the Miami County case does not bar this action. Although the $15,000 settlement did not specify what proportion of the amount was made on behalf of the wrongful death action or the survival action, we conclude that it is not necessary at this time to determine how that settlement amount should be applied to offset any finding of liability of the current defendants. We note that these defendants will not be liable for any proportion of the causal responsibility for plaintiffs' injuries that are assessed against Greving, who may be treated as a phantom party in this action. If it becomes necessary at a later date to determine whether a setoff of the settlement should be made against the liability of these defendants, any doubt will be resolved against the plaintiffs due to their failure to allocate specific amounts of the settlement.

### III. *Survival Action.*

■ Defendants argue that plaintiffs' third cause of action, which is based upon the Kansas survival statute, K.S.A. 60–1801 and 1802, must be dismissed because plaintiffs are not proper parties to bring the action. Rule 17(a) of the Federal Rules of Civil Procedure requires that "[e]very action shall be prosecuted in the name of the real party in interest." Kansas law requires that a survival action must be maintained by the personal representative of the decedent and cannot be prosecuted by a decedent's heirs. *Cory v. Troth*, 170 Kan. 50, 52–53, 223 P.2d 1008 (1950); *Howe v. Mohl*, 168 Kan. 445, 449, 214 P.2d 298 (1950).

■ Plaintiffs filed the instant action as heirs at law of the decedent Victor A. Shinkle. Mary Catherine Shinkle was recently appointed administrator of decedent's estate, more than two years after the collision resulting in Victor Shinkle's death. Defendants argue that the survival action is barred because it was not commenced within the two-year statute of limitations provided in K.S.A. 60–513(a)(4). In order for the survival action to continue, plaintiffs must be permitted to amend the pleadings to name Mary Catherine Shinkle as the administrator of decedent's estate. Rule 15(a) of the Federal Rules of Civil Procedure directs that such leave to amend "be freely given when justice so requires." If such amendment is permitted, we must then decide whether the amendment will relate back to the date of the original pleading, thus bringing the survival action within the two-year statute of limitations set out in K.S.A. 60–513(a)(4). Rule 15(c) provides as follows:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institu-

tion of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

We agree with those courts that permit a plaintiff to change the capacity in which an action is brought when there is no change in the parties before the court and all parties are on notice of the facts out of which the claim arose. In such a case we believe that the amended complaint should be permitted to relate back to the date of the filing of the original complaint. *Russell v. New Amsterdam Casualty Co.*, 303 F.2d 674 (8th Cir. 1962); *Hunt v. Pennsylvania Central Transportation Co.*, 414 F.Supp. 1157 (W.D.Pa.1976); *Fierstein v. Piper Aircraft Corp.*, 79 F.Supp. 217 (M.D.Pa.1948); *Owen v. Paramount Productions*, 41 F.Supp. 557 (S.D.Cal.1941). 3 Moore's Federal Practice 2d Ed., § 15.15[4.–1] at 15–212. In the exercise of our discretion implied in Rules 15(c) and 17(a) of the Federal Rules of Civil Procedure we will give plaintiffs an opportunity to amend their complaint, naming Mary Catherine Shinkle as the administrator of decedent's estate. Since there can be no prejudice to the defendants in granting a request to amend, such an amendment will be permitted to relate back to the filing of the original complaint. Such a result is consistent with the decision in *Metropolitan Paving Co. v. International Union of Operating Engineers*, 439 F.2d 300, 306 (10th Cir. 1971), in which the Tenth Circuit stated: "The fact that an applicable statute of limitations may have run before the real parties were substituted is not significant where the change is merely formal and in no way alters the known facts and issues on which the action is based." (Citations omitted.) This result also agrees with the Tenth Circuit's interpretation of Kansas Supreme Court cases that "where a cause of action is instituted by one not authorized to maintain it and thereafter the proper party plaintiff is substituted in his place, the substitution relates back to the commencement of the action and the statute of limitations stops running as to the substituted plaintiff from the filing of the original action, rather than from the date of the substitution." *Montgomery Ward & Co. v. Callahan*, 127 F.2d 32, 36–37 (10th Cir. 1942), *citing Williams v. Missouri Valley Bridge & Iron Co.*, 111 Kan. 34, 206 P. 327 (1922), and *Harlan v. Loomis*, 92 Kan. 398, 140 P. 845 (1914). Therefore, plaintiffs will be given twenty (20) days from the date of this order in which to file an amended complaint.

IT IS THEREFORE ORDERED that Union City Body Company's motion for summary judgment and defendant General Motor Corporation's motion for summary judgment be and hereby are denied. IT IS FURTHER ORDERED that plaintiffs file an amended complaint within twenty (20) days of the date of this order.