No. 61,428

DOUGLAS MICK, *Appellant*, v. MANI M. MANI, M.D., *Appellee.*
(766 P.2d 147)

Opinion filed December 9, 1988.

*Caleb Boone,* of Hays, argued the cause and was on the briefs for appellant.

*James D. Griffin,* of Blackwell Sanders Matheny Weary & Lombardi, of Overland Park, argued the cause, and *Melinda Swanson Whitman,* of the same firm, and *Larry L. McMullen,* of the same firm, of Kansas City, Missouri, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a medical malpractice action in which plaintiff Douglas Mick claims damages arising from reconstructive surgery performed by defendant, Dr. Mani M. Mani. The district court entered summary judgment in favor of Dr. Mani on the basis that this action was barred by virtue of a verdict in a Rooks County trial in which Mick had sought recovery of damages against a different defendant which included the damages he claims against Dr. Mani in this action. Mick appeals from the entry of said summary judgment.

Douglas Mick was severely injured while working on a drilling rig in Gove County on April 24, 1982. In the accident, Mick sustained severe facial injuries which included crushing fractures to the left side of his face. He was transferred from the local hospital by air ambulance to the Kansas University Medical Center, where he was examined by Dr. Mani. Two other physicians, Dr. Thomas M. Beahm and Dr. John Hiebert, were also involved in his treatment at the medical center to some degree,

but their involvement is immaterial herein. Dr. Mani, a plastic surgeon, performed reconstructive surgery on Mick shortly after his arrival at the hospital.

On or about April 24, 1984, Mick filed two lawsuits. In the Rooks County action (No. 84-C-21), he sued Bethlehem Steel Corporation; Armco Steel Corporation; Armco, Inc.; Schwab's Tinker Shop, Inc.; Larry's Welding Service, Inc.; H & T Pipe; Aaron's Repair and Supply, Inc.; and Aaron G. Maresch. The Rooks County action was predicated upon the theory of products liability being the cause of the oilfield accident. In this action, Mick sought recovery for all of his damages rising from the accident including pain, loss of wages, permanent facial disfigurement, and visual disabilities. On April 24, 1984, he filed the instant action in Johnson County against Drs. Mani, Beahm, and Hiebert, seeking recovery for pain, loss of wages, permanent facial disfigurement, and visual disabilities. This action was predicated upon medical malpractice.

All defendants and, of course, Mick knew of the existence of both lawsuits. Certain joint discovery activities occurred, but plaintiff made certain that no deponents made reference to the existence of two lawsuits in their depositions. The joint discovery was apparently by consent and for convenience. No court order directed any consolidation for discovery or other purposes.

Ultimately, all of the defendants were dismissed from the Rooks County action except for Bethlehem Steel. A total of $40,000 was paid by the settling and/or dismissed Rooks County defendants. Drs. Beahm and Hiebert were dismissed from the case herein by agreement of the parties. Bethlehem Steel was the only remaining defendant in the Rooks County action, and Dr. Mani was the only remaining defendant in the case herein.

The Rooks County case proceeded to trial, commencing on January 20, 1987. Dr. Mani's fault was not compared. Dr. Mani was called as a witness by Mick. The jury returned a verdict finding no fault on the part of Bethlehem Steel. At trial plaintiff sought recovery of his entire damages against Bethlehem, including permanent facial deformity. No appeal was taken by the plaintiff from the verdict.

Following the trial, Dr. Mani filed a motion for summary judgment on the basis of the "one-action" rule (discussed later in the opinion). In his motion for a new trial in Rooks County, Mick

asked the court to consolidate the two cases. On February 5, 1987, Mick filed a motion with the Kansas Supreme Court (file No. 60,460) to consolidate the two cases. The motion was denied on February 13, 1987. Summary judgment was entered in Johnson County on September 17, 1987. Plaintiff appeals therefrom.

Plaintiff contends the trial court erred in entering summary judgment because: (1) the Rooks County trial court would not permit Bethlehem Steel to compare defendant Mani's fault; (2) the accident and defendant's action were two separate occurrences, thereby permitting two separate lawsuits; (3) defendant waived or is estopped to assert the one-action rule of K.S.A. 1987 Supp. 60-258a; and (4) defendant waived the election of remedies defense.

Preliminarily, since this appeal is from a summary judgment, the general rules relevant to the challenge to summary judgment are as follows: Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 830, 752 P.2d 653 (1988); *Hollingsworth v. Fehrs Equip. Co.*, 240 Kan. 398, Syl. ¶ 1, 729 P.2d 1214 (1986); *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695, 695 P.2d 444 (1985). When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Hollingsworth v. Fehrs Equip. Co.*, 240 Kan. at 401; *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, Syl. ¶ 2, 710 P.2d 1297 (1985); *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 (1983).

Preliminarily, we should dispose of the claim the summary judgment was improper because the Rooks County District Court did not allow Bethlehem Steel to compare its fault with that of Dr. Mani. Nowhere in the record can we find where Bethlehem Steel ever requested such a comparison. The only place in the record where such a comparison is referred to which we have located or had our attention directed to was during the October 16, 1985, pretrial of the Rooks County case. In a general discussion of the issues, a defendant other than Bethlehem

mentioned the possibility. A sort of off-the-cuff conversation ensued, ending as follows:

"THE COURT: I don't know that I will be taking anything away from you people at the pretrial. Let me say this, at this point in time I would be planning on comparing the parties plus the co-workers, but not planning on comparing doctors. If somebody convinces me later on that I decided this in the wrong direction, then I can always withdraw and reconsider my last opinion.

"MR. BLEEKER [attorney for a defendant subsequently dismissed]: Might I make a suggestion to the Court, that maybe the Court could establish a deadline for briefing that issue, while we are here today[?]

"THE COURT: I am going to establish some deadline on various things. I did want to see if we could have some general consensus on the issues before I did that.

"MR. CALEB BOONE [attorney for plaintiff]: Your Honor, I would like to mention one thing. Those doctors have been sued by the plaintiff in Johnson County. If that case is consolidated with this one, we would want that to have no bearing on that case, or the fact that they should be brought in, so plaintiff would not be collaterally estopped from relitigating the issues, or estopped by judgment from litigating the issues against them.

"I would just like to make the Court aware of that.

"THE COURT: I don't know that I am going to do anything like that at pretrial frankly. The direction I am heading is to leave you with your Johnson County litigation and not get it into this case. Now, that is where I am tending to be heading. If I change that position later on, we will change the position later on."

There is no indication that briefs were filed or reconsideration was sought by anyone. Dr. Mani was not a party to the Rooks County action and, accordingly, did not participate in the proceedings other than as a plaintiff's witness at trial.

Clearly, Mick wanted to keep the two cases separate. This position only changed after the defendant's verdict in Rooks County and the prospect of the summary judgment herein. Bethlehem Steel apparently was satisfied to keep the cases separate. They were the only two parties who went to trial in Rooks County. Mani had no right or duty to attempt to force his inclusion into the Rooks County litigation as a real or phantom defendant. We find this point to be without merit.

At this point, a review of the Kansas law of comparative negligence is appropriate as it pertains to the one-action concept. K.S.A. 1987 Supp. 60-258a provides as follows:

"(a) The contributory negligence of any party in a civil action shall not bar such party or such party's legal representative from recovering damages for negligence resulting in death, personal injury, property damage or economic loss, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party

in such action shall be diminished in proportion to the amount of negligence attributed to such party. If any such party is claiming damages for a decedent's wrongful death, the negligence of the decedent, if any, shall be imputed to such party.

"(b) Where the comparative negligence of the parties in any such action is an issue, the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants, and the entry of judgment shall be made by the court. No general verdict shall be returned by the jury.

"(c) On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury, property damage or economic loss, any other person whose causal negligence is claimed to have contributed to such death, personal injury, property damage or economic loss, shall be joined as an additional party to the action.

"(d) Where the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party shall be liable for that portion of the total dollar amount awarded as damages to any claimant in the proportion that the amount of such party's causal negligence bears to the amount of the causal negligence attributed to all parties against whom such recovery is allowed.

"(e) The provisions of this section shall be applicable to actions pursuant to this chapter and to actions commenced pursuant to the code of civil procedure for limited actions."

The legislative purpose in passing 60-258a was two-fold: (1) to abolish contributory negligence as a bar to recovery and (2) to provide for the awarding of damages on the basis of comparative negligence. *Mathis v. TG&Y*, 242 Kan. 789, 790-91, 751 P.2d 136 (1988); *Brown v. Keill*, 224 Kan. 195, 197, 580 P.2d 867 (1978).

In *Brown*, the landmark decision concerning the comparative negligence statute, we considered two questions: (1) whether the rule of joint and several liability of joint tortfeasors had been retained in actions governed by 60-258a; and (2) whether the causal negligence or fault of all parties to a collision or occurrence in a comparative negligence action should be considered even though one of the parties was not served with process or joined as a formal party to the action. 224 Kan. at 197. On the first question we held that, under 60-258a, the concept of joint and several liability no longer applied. 224 Kan. at 204. On the question whether all parties' negligence should be considered, we concluded as follows:

"After having answered the preliminary questions and having applied the rules of statutory construction previously set forth in this opinion we conclude the intent and purpose of the legislature in adopting K.S.A. 60-258a was to

impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault." 224 Kan. at 207.

Shortly after the *Brown* decision, we barred a second trial among joint tortfeasors in *Eurich v. Alkire*, 224 Kan. 236, 579 P.2d 1207 (1978). There, a two-car crash occurred. One car was driven by Bonnie Faris. The other car contained Orlan Eurich and Wesley Alkire. Faris brought an action against Eurich and Alkire, alleging she did not know who was driving but charging the driver was negligent. Both defendants answered, alleging the other was the driver. At trial the jury found Eurich was the driver at the time of the accident. The plaintiff was awarded $50,000, with fault attributed to Eurich at 40 percent, and 60 percent to Alkire, the owner of the car, for negligent entrustment.

While the first case was pending, Eurich sued Alkire seeking recovery for injuries suffered in the accident. After the decision in the first case, Alkire moved for, and was granted, summary judgment. The district court ruled the jury's findings in the first case controlled. 224 Kan. at 237. In refusing to permit the second trial, we stated:

"Looking to the historical background of the enactment, the circumstances attending its passage, and the purpose to be accomplished by the act, as is required when construing any legislative act (*Brown v. Keill*, [224 Kan. 195, 580 P.2d 867 (1978)]), we believe it was the intent of the legislature to fully and finally litigate all causes of action and claims for damage arising out of any act of negligence subject to K.S.A. 60-258a. The provision for determining the percentage of causal negligence against each person involved in a negligence action contemplates that the rights and liabilities of each person should be determined in one action. Because all issues of liability are determined in one action there can be no reasonable argument that the issues should be relitigated. Likewise, there is no reasonable argument for the proposition that a claim for damage arising out of one collision or occurrence should not be presented at the time negligence is originally determined. We believe this construction satisfies the rule that it is the duty of the courts to ascertain the intent of the legislature from the subject matter of the statute and, so far as is practicable, reconcile various conflicting provisions of the act in order to make them consistent, harmonious, and sensible. (*Jordan v. Doonan Truck & Equipment, Inc.*, 220 Kan. 431, 434, 552 P.2d 881 [1976].)

"We conclude that all persons who are named as parties and who are properly served with summonses are bound by the percentage determination of causal negligence. *Because the statute contemplates that each party has a right to cross-claim against any or all other parties to a lawsuit, we hold that any party who fails to assert a claim against any other party in a comparative negligence*

*action is forever barred.* A corollary rule naturally follows that a person who has not been made a party to a comparative negligence case should not be bound by a judgment therein, even though his causal negligence may have been determined." 224 Kan. at 237-38. (Emphasis supplied.)

In *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981), plaintiff was injured in a two-car accident. The jury determined the plaintiff to be 40 percent at fault and the defendant 60 percent at fault. Albertson recovered 60 percent of his damages from the other driver. Plaintiff then attempted to sue the manufacturer in federal district court, claiming his injuries were enhanced and increased by design defects. 230 Kan. at 368-69. The federal court certified the following question to the Kansas Supreme Court:

"Having once obtained a satisfied judgment for a portion of his injuries in a comparative negligence action, may a plaintiff bring an action to recover damages for the remaining portion of his injuries against a defendant not a party to the first action, such second action being based on strict liability in tort?" 230 Kan. at 369.

The *Albertson* court reviewed the comparative negligence statute and stated that the joinder provision of 60-258a(c) applied only to defendants and was permissive. The court also noted the *Brown* and *Eurich* holdings that in a negligence action all parties to the occurrence must have their rights and liabilities determined in one action. 230 Kan. at 371. The court answered the certified question in the negative, concluding:

"Albertson's injuries were allegedly caused by a combination of the collision and the lack of crashworthiness of the vehicle in which he rode. They resulted from one occurrence. Albertson's total injuries were evaluated by the jury and determined to be $275,000. Albertson was found responsible for 40% of his own injuries; 60% were caused by others. Albertson was paid for all of his injuries caused by the liability of others. The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by that decision. Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability." 230 Kan. at 374.

In *Teepak, Inc. v. Learned*, 237 Kan. 320, 699 P.2d 35 (1985), we applied the one-action rule to *successive* tortfeasors. In *Teepak*, Carl Baise became ill after eating some sausage which caused an obstruction in his small intestine. Thereafter, Dr. George Learned performed surgery upon Baise, removing two-thirds of the patient's small intestine. Baise filed a lawsuit

against the sausage manufacturer (Alewel's) and the manufacturer of the sausage casing (Teepak). Teepak filed a third-party complaint against Learned, seeking "indemnity or subrogation" for sums Teepak might have to pay Baise. 237 Kan. at 321.

After defendants settled with Baise and the case was dismissed, Teepak sought post-settlement contribution from Learned. Learned sought summary judgment. The district court denied Learned's motion for summary judgment and an interlocutory appeal to this court followed. The specific question before this court was stated as follows:

"Whether or not the Kansas law of comparative negligence permits a tortfeasor causing physical injury to a person to settle with the injured person and then proceed against a physician whom the tortfeasor (but not the injured party) claims added to the injured party's damages through negligent treatment of the injured party." 237 Kan. at 322.

In *Teepak* we refused to limit the one-action holding of *Brown v. Keill*, 224 Kan. 195, to *joint* tortfeasors, reasoning as follows:

"Teepak argues that the abolition of both joint and several liability and the right of contribution among tortfeasors as determined in *Brown* is limited to *joint* tortfeasors and does not apply to successive tortfeasors as in the case before us. In support thereof, Teepak shows that existing Kansas case law imposes liability on the tortfeasor causing the initial injury for any additional injury to the injured party arising from medical malpractice occurring in the treatment of the original injury. *Fieser v. St. Francis Hospital & School of Nursing, Inc.*, 212 Kan. 35, 510 P.2d 145 (1973), is a case wherein this principle is extensively discussed and applied.

"We see no valid reason for limiting the holding in *Brown* solely to the *joint* tortfeasor situation. The concept of contribution among tortfeasors arises from equitable origins—a person partially causing injury to another but paying for all of the injury should be entitled to contribution thereon from another person causing part of the injury. The equitable need for contribution vanishes when one tortfeasor has the statutory right to bring other tortfeasors into the action as defendants and have fault (and liability) proportionally determined. The injured person herein, Carl Baise, sued Teepak and Alewel's seeking recovery for the injuries received from eating the sausage. Teepak claims part of those injuries arose from medical malpractice. Teepak could have brought Dr. Learned into the action as a party whose negligence should be compared with that of Teepak and Alewel's. Instead, Teepak brought Learned in under third-party practice, an indemnification procedure." 237 Kan. at 325-26.

In holding that Teepak did not have a cause of action predicated upon either contribution or indemnification, we said:

"Before concluding, it should be noted that the result reached herein is wholly consistent with the philosophy, as expressed in *Albertson v. Volkswagenwerk*

*Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981), that comparative fault should be determined in one action. It is true *Albertson* spoke of determining the comparative fault of 'all of the parties to the occurrence' in one action and, in the case before us, Teepak and Learned were not, strictly speaking, parties to the same occurrence. However, the initial injury caused by Teepak required medical attention which Teepak contends was done negligently and increased the injured party's damages. The injured party filed suit seeking recovery for all of his damages against the two corporations he contended were responsible therefor. The two corporations settled the entire claim and, under the rule of *Ellis [v. Union Pacific R.R. Co.*, 231 Kan. 182, 643 P.2d 158 (1982)], previously cited, cannot attempt to impose liability where there is none. A settling party in such circumstances has no claim to settle but his own.

"We have previously held that fault based upon such diverse matters as a highway defect (*Wilson v. Probst*, 224 Kan. 459, 581 P.2d 380 [1978]), and an automobile design defect (*Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368), must be determined in one action and compared with fault based on such matters as traffic code violations and automobile drivers. It would be wholly inconsistent therefore to permit multiple litigation under the facts of the case herein." 237 Kan. at 328-29.

Thus, we applied the one-action rule to successive tortfeasors, even though we acknowledged that Teepak, the manufacturer, and Learned, the physician, were not, "strictly speaking, parties to the same occurrence." 237 Kan. at 329.

In *Mathis v. TG&Y*, 242 Kan. 789, plaintiff alleged a loose door closure hit his head as he was leaving a TG&Y store in Wichita, resulting in personal injury. He filed a lawsuit against TG&Y. During discovery, TG&Y indicated its intent to compare the negligence of Jacobs Construction Co., Inc., TG&Y's landlord, and Hopper's Mirror & Glass, Inc., which had done repair work on the doors. Mathis thereupon amended his petition, adding these companies as defendants and also G&J Investments, Inc., the original landlord. Later, after discovering the actual landlord was Vernon Jacobs personally, and that Jacobs hired Cheney Door Company, Inc., to maintain the doors, Mathis filed a separate lawsuit against them, alleging the same facts and injuries. 242 Kan. at 789-90. Defendants G&J Investment, Inc., Jacobs Construction Co., Inc., and Hopper's Mirror & Glass were subsequently dismissed without prejudice from the original suit, leaving TG&Y as the sole remaining defendant in that lawsuit. Both defendants in the second suit were later dismissed, Jacobs having settled with Mathis. Because the second lawsuit was dismissed, there was no judicial adjudication of comparative fault of the defendants.

TG&Y then moved in the original action for summary judgment based on the one-action rule of *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, and *Teepak, Inc. v. Learned*, 237 Kan. 320. The district court granted the motion, finding as follows:

" 'The court finds that as a matter of law and pursuant to *Albertson v. Volkswagen*, and the other cases cited by defendants, plaintiff has split his cause of action, violated the comparative fault doctrine, and that his case against TG&Y should be dismissed.' " 242 Kan. at 790.

We reversed. After reviewing the comparative fault doctrine and the *Albertson* and *Teepak* cases, we concluded as follows:

"After an adjudication of comparative fault, no party should be afforded a second opportunity to litigate percentages of causal negligence. K.S.A. 60-258a certainly contemplates one action in which comparative fault is determined. However, it was never the intent of the legislature or this court to place form over substance and preclude a plaintiff from proceeding against a tortfeasor when there has been no judicial determination of comparative fault. Mathis has been denied his action. TG&Y is not prejudiced by allowing the suit to proceed. It may join other defendants for the purpose of comparing negligence at the trial." 242 Kan. at 794.

The *Mathis* decision was by a divided court, 4-3. The dissent, written by Justice Herd, stated:

"We have repeatedly held that under K.S.A. 60-258a all parties and issues arising from one incident must be resolved in one action. *Teepak, Inc. v. Learned*, 237 Kan. 320, 699 P.2d 35 (1985); *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981); *Eurich v. Alkire*, 224 Kan. 236, 237, 579 P.2d 1207 (1978); *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978). The majority does not take issue with that principle, but holds dismissal of an action with prejudice, after settlement, is not an adjudication of comparative fault on the merits, thus permitting the maintenance of additional actions arising out of the same incident against other parties. I believe it better law for dismissal with prejudice to be considered a determination of the case on its merits. See *Mars v. McDougal*, 40 F.2d 247 (10th Cir.), *cert. denied* 282 U.S. 850 (1930); *Pulley v. Chicago, R. I. & P. Rly. Co.*, 122 Kan. 269, 251 Pac. 1100 (1927); James & Hazard, Civil Procedure § 6.6 (3d ed. 1985).

"Ninety percent of all civil cases filed in Kansas are resolved by settlement. In most instances they are dismissed with prejudice. By holding a dismissal with prejudice is not an adjudication on the merits, we leave the action open for further proceedings against other parties. This will have a chilling effect on some settlements. It will also create an unwarranted burden on the court system as the same cause of action may be repeatedly filed against different defendants with no final resolution of the action being made." 242 Kan. at 794-95.

In *Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667 (1988),

Jacob Anderson was severely injured by an auger while delivering a load of poultry meal to a plant. A Missouri resident, Anderson filed suit against the owner and operator of the plant, Badger By-Products, located in Wyandotte County, Kansas. Badger By-Products, a division of Beatrice Companies, Inc., (Beatrice) a Delaware corporation with its principal place of business in Illinois, successfully petitioned for removal of the case to federal district court. Plaintiff moved to remand the case to state court. The motion was denied. Plaintiff then amended his petition to join four additional defendants—Beatrice; Conveyers, Inc., manufacturer of the auger; Arthur J. Gallagher & Co., a Delaware corporation that had supervised efforts to reduce hazardous conditions at the plant; and Industrial Bearing and Transmission Company, Inc., (IBT) a Missouri corporation that sold the auger to Badger By-Products. 242 Kan. at 857-58.

Plaintiff again moved to remand the case to state court because the addition of IBT as a party defendant would destroy diversity jurisdiction. The court granted plaintiff's motion to amend, adding the additional defendants, but did not include IBT because to do so would destroy diversity jurisdiction. The court then denied the motion to remand because, since IBT was not added as a party defendant, diversity jurisdiction was not destroyed and there was no reason for a remand to state court. 242 Kan. at 858-59.

Plaintiff thereafter filed an action naming IBT and Randy Scheffler as defendants. Scheffler was an IBT employee who had accepted the auger order from Badger By-Products.

In the federal case, neither plaintiff nor any of the named defendants made any allegation of fault on the part of IBT or Scheffler. Plaintiff subsequently settled with Beatrice, under which he released all parties except IBT and Scheffler. 242 Kan. at 859. The case was dismissed with prejudice.

The Wyandotte County District Court then granted the summary judgment motions of IBT and Scheffler, and plaintiff appealed. We reversed on the basis that a determination of comparative fault had not occurred, despite plaintiff's efforts to preserve his action against IBT and Scheffler. After reviewing the comparative fault doctrine and its leading Kansas cases, a unanimous court concluded:

"The case must also be controlled by *Mathis v. TG&Y*, 242 Kan. 789, 751 P.2d

136 (1988). In *Mathis*, the plaintiff sued TG&Y, the tenant, for personal injuries caused by a defective door. While that action was pending, the plaintiff filed another suit for the same injuries from the same accident against Vernon Jacobs, the landlord, and Cheney Door Co., the maintainer of the door, in the same jurisdiction. TG&Y was afforded no notice of the second action. The action against Vernon Jacobs and Cheney Door Co. was dismissed by the court with prejudice. The trial court then dismissed the action against TG&Y following *Albertson*, 230 Kan. 368, and *Teepak*, 237 Kan. 320. In each of the foregoing cases we held all parties to an action must be joined in the same action and that resolution of the issues binds all the parties. In spite of the precedent, we held in *Mathis* by a divided court that a dismissal with prejudice binds only the parties dismissed in the absence of a determination of comparative fault.

"The arguments and authorities in the case at bar concerning the question of whether res judicata, collateral estoppel, or comparative fault rules apply when a case has been dismissed without a determination of comparative fault are identical to those set out in *Mathis*. There are, however, two differences between the cases ˙on this question. In the present case, the settlement agreements specifically attempted to retain the right to bring suit against IBT and Scheffler. A more important difference is that the plaintiff in *Mathis* was in entire control of his suit and made the decision to sue different defendants in different actions. Here, appellant did everything he could to preserve his lawsuit against IBT and Scheffler. He moved to amend his petition to include IBT. He moved to remand the case to state court. In each instance his motions were overruled. Finally, appellant attempted to preserve his action against IBT and Scheffler by specifically excepting them from his releases.

"Despite the differences between the two cases, however, the instant case, although decided as an exception to the *Albertson* rule, also falls under the broader rule expressed in *Mathis*. There has not yet been a comparison of fault at trial." 242 Kan. at 865-66.

Our most recent examination of comparative fault occurred in *Childs v. Williams*, 243 Kan. 441, 757 P.2d 302 (1988). In *Childs*, the 12-year-old plaintiff was injured in an automobile accident. A settlement was negotiated between Childs' mother and Michael Wesson, driver of the car in which Childs was a passenger. Because of Childs' minority status, which required court approval of the settlement to make it binding, Childs' mother filed a negligence action against Wesson on Childs' behalf. A friendly hearing was held approving the settlement and awarding judgment under the terms of the agreement. No determination of comparative fault was made, nor did Childs make any attempt to preserve a right of action against Kristine Williams, the driver of the other car. 243 Kan. at 441-42.

Childs' mother subsequently filed a negligence action against Williams, which action was dismissed by the district court based on the one-action rule of *Albertson v. Volkswagenwerk Aktien-*

*gesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981). The Court of Appeals affirmed the dismissal of the action. We reversed on the basis of the *Mathis v. TG&Y*, 242 Kan. 789, 751 P.2d 136 (1988), and *Anderson v. Scheffler*, 242 Kan. 857, holdings, reasoning:

"We held in *Mathis* that each plaintiff must be allowed a trial judicially determining comparative fault, regardless of whether the plaintiff had the opportunity to do so earlier in one action. In *Anderson v. Scheffler*, 242 Kan. 857, 866, 752 P.2d 667 (1988), we acknowledged that, under *Mathis*, a plaintiff is not barred from bringing further suits against additional defendants concerning the same cause of action until it has actually received a *comparison of fault* at trial.

"There is no rational way to distinguish the case at bar from *Mathis*. There was nothing in either case to prevent the plaintiffs from joining all defendants in one suit. In *Mathis*, we modified the strong language of *Albertson* to allow a plaintiff to sue another tortfeasor after settlement with another where there was no judicial determination of comparative fault. 242 Kan. at 792-93. There was no judicial determination of comparative fault in Childs' first action. We therefore hold the trial court erred in dismissing this action." 243 Kan. at 443.

Therefore, it appears that under the most recent comparative fault cases, namely *Mathis, Anderson,* and *Childs,* a plaintiff may pursue separate actions against tortfeasors where there has been no judicial determination of comparative fault. Thus, the exceptions to the one-action rule arise when there has been no prior judicial determination of fault. The friendly suit required by law to approve the minor's settlement in *Childs v. Williams,* 243 Kan. 441, was not a judicial determination of comparative fault. In *Mathis v. TG&Y* there were two lawsuits but, as a result of settlements, only one defendant remained (TG&Y). The same is true of *Anderson v. Scheffler,* 242 Kan. 857. By virtue of these recent cases, the one-action rule should, perhaps, more accurately be described as the one-trial rule. In each of the cases the issue on appeal was whether the plaintiff was entitled to a trial—not whether he or she could have two trials, as plaintiff herein seeks.

In the case in Rooks County, the jury had before it plaintiff's entire claim of damage. It heard the evidence and concluded the defendant therein was not at fault. This was a determination of comparative fault. True, the jury did not have Dr. Mani in the action for comparison. Plaintiff elected to separate his defendants but not his claims of damage. As a result, his entire damage claim was presented to the Rooks County jury. When that verdict became final, plaintiff's entire damage claim was ended. As we said in *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368:

"The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by that decision. Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability." 230 Kan. at 374.

Plaintiff argues that waiver and estoppel should render the summary judgment improper. By virtue of the exceptions to the one-action rule set forth in *Mathis and Anderson*, the plaintiff's claim against Mani was viable until the Rooks County judicial determination of fault. Mani promptly moved for summary judgment after the verdict. Plaintiff characterizes Mani's action as lying in wait for the unwary. Plaintiff's counsel should have been alert to the risk he was taking as a part of his strategy to separate the defendants.

Plaintiff's two-occurence argument need not be considered in depth as it was resolved against his position in our holding in *Teepak, Inc. v. Learned*, 237 Kan. 320, 699 P.2d 35 (1985), previously quoted.

Plaintiff makes a rambling argument concerning res judicata and splitting causes of action which is difficult to summarize. Plaintiff discusses *First Nat'l Bank v. Schruben*, 125 Kan. 417, 265 Pac. 53 (1928), and states:

"The court applied the Doctrine of *res judicata* to prohibit splitting a cause of action. *Id.* syl. para. 1-3. The court analyzed the basic rule and its application to splitting causes of action generally, as follows:

'The pertinent law on this subject is simple and well fortified by decided cases. Once a cause of action has been prosecuted to final judgment, all matters pertaining thereto and which were or properly should have been litigated under the facts constituting such cause of action are conclusively determined by that judgment . . . . [citations omitted].

'In *Steele v. Stephenson*, 104 Kan. 469, 474, 179 Pac. 304, it was said:

" 'The doctrine of *res judicata* applies not only to the questions brought forward by the defendants in their testimony but also as to every question open to consideration as a part of the subject of litigation and which could have been presented at that time. [citations omitted].' "

'Equally well settled is the rule that a single demand may not be split into fractional parts . . . .
* * *

'The principle underlying the rule was discussed in *Coal Co. v. Brick Co.*, 52 Kan. 747, 35 Pac. 810, thus:

" '*It is the policy of the law to avoid a multiplicity of actions*, and a party

is not permitted to split a cause of action into two or more parts and maintain separate actions for each of the separate parts. A recovery of one part of an action so split up will constitute a complete bar to a recovery upon any remaining portion thereof . . . . The Doctrine of *res judicata* forbids a repetition of vexatious lawsuits, and a former trial and judgment upon one of the items is conclusive . . . as to all matters which were or might have been litigated in all other actions, whether commenced before or after the action in which the adjudication was made. [Citations omitted.]' (p. 749)."

Plaintiff then argues that the one-action rule is but an extension of the doctrine of res judicata. From there he concludes that, as res judicata is an affirmative defense pursuant to K.S.A. 60-208(c), the failure of defendant Mani to assert same in his answer is a waiver of that defense. This is an apples and oranges argument. Mani was never a party in the Rooks County action. Multiple actions against the same defendant on the same cause of action are not involved herein. Additionally, the triggering event (the Rooks County verdict) did not occur until almost three years after the filing of the action herein. When it did occur, Mani promptly moved for summary judgment. The one-action rule is not an extension of the doctrine of res judicata but the result of legislation. In *Eurich v. Alkire*, 224 Kan. 236, 579 P.2d 1207 (1978), we held that by the enactment of 60-258a the legislature intended that henceforth all negligence claims arising out of one occurrence must be determined in one action. The rationale underlying this holding is set forth earlier in this opinion and need not be repeated. We conclude plaintiff's arguments in this regard are without merit.

Last, plaintiff's contentions concerning the election of remedies are not only without merit but, if considered, are self-defeating. In 25 Am. Jur. 2d, Election of Remedies § 14, it is said:

"To be concluded by an election of remedies, a suitor must not only have a choice of two or more effective remedies, but he must also actually select one of them; that is, he must, by some act or course of procedure taken with knowledge of his rights and without fraud or imposition on the part of his adversary, resort to one of the modes of redress, thus evincing a purpose to forego the other or others."

Therefore, if an election of remedies is pertinent, plaintiff, by pursuing the Rooks County litigation without joining defendant herein, sought his remedy totally against the manufacturer, evincing a purpose to forego his remedy against Dr. Mani.

The judgment is affirmed.