NOT DESIGNATED FOR PUBLICATION

No. 116,894

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ELIZABETH PHILLIPS, CONNOR PHILLIPS, HALEE KENNETT, and MARLEAH PHILLIPS, for
the Wrongful Death of DOUGLAS DWAYNE PHILLIPS, Deceased, and ELIZABETH PHILLIPS,
as Special Administrator for the Estate of DOUGLAS DWAYNE PHILLIPS,
*Appellants*,

v.

TERRY PHILLIPS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Labette District Court; DARYL D. AHLQUIST, judge. Opinion filed October 20, 2017.
Affirmed.

*Fred Spigarelli* and *Kala Spigarelli*, of The Spigarelli Law Firm, of Pittsburg, for appellants.

*Kevin L. Bennett*, of Bennett, Bodine & Waters, P.A., of Shawnee, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.

PER CURIAM: Doug Phillips was crushed and killed by a skid steer operated by his
father, Terry Phillips. Doug's family (Plaintiffs) obtained a consent judgment against
Terry for $1.5 million. Plaintiffs agreed not to execute the judgment in exchange for
Terry assigning his rights to them to pursue his insurer, Farm Bureau. Terry's liability
insurance limit was $1 million. The district court approved the consent judgment, but the
Court of Appeals reversed because of the failure of the Plaintiffs to make an adequate
record to enable the district court to give a full, complete, and independent consideration
of all relevant factors supporting the consent judgment. *Phillips v. Phillips*, No. 105,349,

1

2013 WL 1444259, at *12 (Kan. App. 2013) (unpublished opinion). On remand, the district court refused to hold another consent judgment hearing because the one-action rule prohibits Plaintiffs from relitigating Terry's liability, and if Plaintiffs cannot prove that Terry is liable they cannot obtain a valid consent judgment. Plaintiffs appealed, arguing that an exception to the one-action rule applies in their case because it was not feasible for them to join Terry to the litigation against the manufacturer. We disagree. It was feasible for Plaintiffs to join Terry to the suit against the manufacturer, but they made the strategic choice to pursue a consent judgment. Plaintiffs are not entitled to a second opportunity because their strategy failed.

FACTUAL AND PROCEDURAL HISTORY

This is the second time these parties have appealed to this court. The underlying facts of this case were set forth in *Phillips*. The court briefly summarized the facts as follows:

"This case arises out of a farm accident which occurred on May 7, 2005. Douglas Phillips (Doug) was working with his father, Defendant Terry Phillips, building a pasture fence. Terry was operating a John Deere 250 skid steer with a tree shear attachment. The skid steer unexpectedly tipped forward, striking Doug and trapping him under the tree shear. Doug died shortly after the accident from the injuries sustained.

"Terry carried liability insurance with Farm Bureau Mutual Insurance Company (Farm Bureau). An initial settlement offer from Farm Bureau was rejected by Doug's wife, Elizabeth Phillips. She contacted legal counsel, and in July 2006, she and her children (Connor Phillips and Halee Phillips Kennett) filed suit against Terry and Deere & Company, Inc. After a protracted period of settlement negotiation and an unsuccessful mediation, Terry and the Plaintiffs entered into an agreement in December 2007 for a consent judgment accompanied by an assignment to Plaintiffs of Terry's rights against Farm Bureau in exchange for a covenant not to execute the judgment against Terry personally. In January 2008, Plaintiffs sought and obtained approval of the consent judgment by the district court, which entered judgment against Terry.

2

"Plaintiffs reserved and separately pursued their wrongful death action against Deere, which resulted in a jury verdict finding no fault on the part of Deere, and no comparative fault on the part of Terry or Doug.

"On July 31, 2008, Plaintiffs brought a garnishment action against Farm Bureau seeking to enforce the consent judgment. After another protracted period of negotiation and litigation, the district court filed a memorandum opinion on October 25, 2010, enforcing the judgment against Farm Bureau. In a subsequent memorandum opinion filed on February 11, 2011, the court assessed interest and attorney fees against Farm Bureau. Farm Bureau timely appealed these judgments, which are consolidated herein." 2013 WL 1444259, at *1.

The Court of Appeals reversed the district court's approval of the consent judgment. 2013 WL 1444259, at *1. Plaintiffs argued that the consent judgment adhered to the rule in *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990). *Glenn* provided that a consent judgment in excess of insurance policy limits can only be enforced against the insurer if the judgment is reasonable and entered into in good faith. 247 Kan. at 318. In order to make a prima facie case of reasonableness of a consent judgment, the plaintiff must establish the defendant's fault and liability. *Phillips*, 2013 WL 1444259, at *9.

For the district court to make a finding that a consent judgment is reasonable, "'the proof requires, at a minimum, enough information for the district court to make an *independent evaluation* of the reasonableness of the settlement.' (Emphasis added.)" 2013 WL 1444259, at *9 (quoting *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 841, 934 P.2d 65 [1997]). In this case, Plaintiffs gained the district court's approval of their consent judgment at a nonadversarial hearing at which Farm Bureau was not represented. At this hearing, there were no findings or discussions of Terry's liability. The Court of Appeals was concerned with "the brevity of the expedited hearing and the summary nature of the court's ruling from the bench." 2013 WL 1444259, at *12. It appeared "that the district court did not address in any depth the strengths or

3

weaknesses of the Plaintiffs' claims and the defendant's defenses or make an independent determination as to the reasonableness of the settlement." 2013 WL 1444259, at *12. The court held that

> "[t]he failure of Plaintiffs to make an adequate record to enable the district court to give a full, complete, and independent consideration of all relevant factors leads us to the conclusion that the Plaintiffs have not met the *Glenn* threshold of establishing a prima facie case that the consent agreement was entered in good faith and is fair and reasonable." 2013 WL 1444259, at *12.

The court concluded:

> "Since a consent judgment must be fair and reasonable and entered into in good faith as a prerequisite to enforceability against an insurer, it follows that the judgments of the district court filed on October 25, 2010, finding Farm Bureau responsible for paying the judgment and on February 11, 2011, determining interest and attorney fees are without basis in law and are, accordingly, reversed. We remand to the district court to enter appropriate orders vacating any such judgments against Farm Bureau and dismissing the garnishment proceedings." 2013 WL 1444259, at *12.

Following the Court of Appeals' mandate, the district court entered an order vacating its prior judgments. The district court also dismissed a garnishment action by Plaintiffs against Farm Bureau. Plaintiffs then filed a motion to vacate or set aside the consent judgment. The district court granted this motion.

In May 2016, Plaintiffs filed a motion to schedule a consent judgment hearing. Plaintiffs noted that while the district court set aside the consent judgment, "[t]he settlement between Plaintiffs and Defendant Terry Phillips, the covenant not to execute, and the assignment of Defendant Terry Phillips' rights against Farm Bureau entered into by the Parties is still in effect." Plaintiffs also noted that the Court of Appeals never exonerated Terry "from his negligent acts that caused the death of his son as a matter of

4

law." They argued that "[t]he Court of Appeals had the option to reverse the judgment of the District Court and grant a judgment in favor of Farm Bureau and Defendant Terry Phillips. That did not happen! Therefore the Plaintiffs are entitled to their day in Court against Defendant Terry Phillips." Plaintiffs then asked the district court to schedule another consent judgment hearing.

Terry objected to Plaintiffs' request. He argued that "Kansas law is quite clear that this litigation has been concluded and that Plaintiffs are not entitled to any relief whatsoever, including a new consent judgment hearing." He characterized Plaintiffs' strategy as taking "a gamble that they would be able to 'set up' Farm Bureau for a bad faith claim, obtain more than his policy limits and then proceed to trial against the separate Defendant Deere seeking additional funds. Unfortunately for the Plaintiffs, this plan backfired." Terry also noted that Plaintiffs would need to prove his liability before obtaining an enforceable consent judgment. In Plaintiffs' 2008 case against John Deere, a jury found that Terry was not at fault. Because he had already been cleared of liability, Terry argued that the one-action rule prevented Plaintiffs from relitigating the issue in order to obtain an enforceable consent judgment.

Plaintiffs responded, arguing that an exception to the one-action rule applied in their case. They argued that the one-action rule only applies when it is feasible to join all relevant parties to a lawsuit. Plaintiffs argued that it was not feasible for them to join Terry in the case against Deere because they had already obtained a consent judgment against Terry. Because the consent judgment was a final judgment, they argued that res judicata prevented them from asserting further claims against Terry.

The district court scheduled a hearing for the motion.

The court noted that "[a]t no time did Terry Phillips make any agreement that the settlement was conditional upon its collection and/or enforcement." The court also said:

5

"Assuming for argument purposes that this Court ordered a consent judgment hearing, the Court would have to find a basis to establish liability on the part of Terry Phillips to find that the settlement and consent judgment was reasonable under the circumstances pursuant to Kansas case law." The court could only make this finding if Plaintiffs evaded the one-action rule. The court also rejected the Plaintiffs' argument that an exception to the one-action rule applied because it was not feasible for them to join Terry to the case against Deere. The court felt that this was a strategic move by Plaintiffs and that they should have been aware of the risk of the strategy.

Plaintiffs appealed.

ANALYSIS

Plaintiffs frame this appeal as having two issues: (1) Did the district court err in not allowing the case to be set for a second consent judgment hearing? and (2) did the district court err in finding that a trial against Terry to determine his liability for Doug's death would violate the one-action rule? The second issue is determinative of the first. As this court stated in the first appeal of this case, "[t]he liability of an insurer is premised upon some consideration and determination of liability on the part of the insured." *Phillips*, 2013 WL 1444259, at *9. If Plaintiffs cannot prove Terry's liability, then another consent judgment hearing would be useless. Thus, that issue will be discussed first.

Neither party provides a standard of review. The parties do not dispute the facts relevant to this appeal—they only dispute the application of the one-action rule. This court exercises de novo review over issues of law. See *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015) (exercising plenary review over an issue of res judicata).

6

The one-action rule derives from K.S.A. 2016 Supp. 60-258a(b). This statute provides:

> "*Special verdicts or findings required.* When the comparative negligence of the parties is an issue, the jury must return special verdicts, or in the absence of a jury, the court must make special findings, determining the percentage of negligence attributable to each party and the total amount of damages sustained by each claimant. The court must determine the appropriate judgment."

The Kansas Supreme Court has previously stated that the intent of the legislature was "to fully and finally litigate all causes of action and claims for damage arising out of any act of negligence subject to K.S.A. 60-258a." *Eurich v. Alkire*, 224 Kan. 236, 237-38, 579 P.2d 1207 (1978). The court added that "[t]he provision for determining the percentage of causal negligence against each person involved in a negligence action contemplates that the rights and liabilities of each person should be determined in one action." 224 Kan. at 238. In a later case, the Kansas Supreme Court said that "[a]fter an adjudication of comparative fault, no party should be afforded a second opportunity to litigate percentages of causal negligence. K.S.A. 60-258a certainly contemplates one action in which comparative fault is determined." *Mathis v. TG&Y*, 242 Kan. 789, 794, 751 P.2d 136 (1988). This principle has become known as the one-action rule. But see *Mick v. Mani*, 244 Kan. 81, 93, 766 P.2d 147 (1988) ("[T]he one-action rule should, perhaps, more accurately be described as the one-trial rule.").

Here, the parties' liabilities were determined in Plaintiffs' case against Deere, "which resulted in a jury verdict finding no fault on the part of Deere, and no comparative fault on the part of Terry or Doug." *Phillips*, 2013 WL 1444259, at *1. The one-action rule prevents Plaintiffs from relitigating liability. See *Mathis*, 242 Kan. at 794. However, Plaintiffs argue that an exception to the one-action rule applies to their case because it was not feasible to join Terry to the litigation against Deere.

7

Plaintiffs cite *Anderson v. Scheffler*, 242 Kan. 857, 864, 752 P.2d 667 (1988), for the proposition that the one-action rule "is based on the feasibility, under Kansas law, of joining all parties." There, Jacob Anderson's leg was severed by an auger at a plant owned and operated by Badger By-Products. He sued Badger in Wyandotte County, Kansas, and Badger removed the case to federal court on the basis of diversity jurisdiction. Anderson then attempted to add four more defendants and remand the case to state court. One of these defendants, Industrial Bearing and Transmission Company (IBT), would have destroyed diversity jurisdiction. The federal court allowed Anderson to add the three diverse defendants but not IBT. The court also denied Anderson's motion to remand to state court. Anderson initiated a second suit against IBT and Randy Scheffler (an IBT employee) in Kansas. Anderson entered a settlement agreement with all defendants except IBT and Scheffler and dismissed his federal case. The district court then entered summary judgment for IBT and Scheffler on the basis that "all comparative negligence must be determined in one action." 242 Kan. at 862. Anderson appealed.

On appeal, the Kansas Supreme Court framed the issue as "whether, under the principles of comparative fault, a plaintiff may settle and dismiss with prejudice a negligence action in federal district court and then pursue a second action in state court against additional parties for damages arising out of a single occurrence." 242 Kan. at 861-62. The court discussed *Greenwood v. McDonough Power Equipment, Inc.*, 437 F. Supp. 707 (D. Kan. 1977). There, a plaintiff sued a manufacturer of a lawn mower in federal court. The manufacturer attempted to join additional defendants to the action but was refused because those defendants would have destroyed federal diversity jurisdiction. The federal court was still able to determine the nonparties' comparative negligence. It "held the plaintiff, by choosing to file in federal court, bore the risk that nonparties from which he could collect would be found to have caused a large percentage of the total damage." 242 Kan. at 864. The *Anderson* court distinguished *Greenwood* by noting that Anderson "did not voluntarily accept the risk of nonjoinder by selecting the federal

forum." 242 Kan. at 864. Anderson actually fought to have the case remanded back to state court.

The court then noted that the one-action rule is premised on the idea that "'the statute contemplates that each party has a right to cross-claim against any or all other parties to a lawsuit.'" *Anderson*, 242 Kan. at 864 (quoting *Eurich*, 224 Kan. at 238). The court held that "[t]he *Eurich* holding is based on the feasibility, under Kansas law, of joining all parties." 242 Kan. at 864. The court held that it was not feasible for Anderson to join all parties to his suit: "In the instant case it was the defendants who removed the action to federal court for strategic reasons. Appellant tried to remand the case to state court." 242 Kan. at 864-65.

Finally, the *Anderson* court held that the case was also controlled by *Mathis*. *Anderson*, 242 Kan. at 865. In *Mathis*, the plaintiff filed two separate lawsuits against defendants he alleged were responsible for his injuries. The second action settled. The district court dismissed the first action on the basis of the one-action rule. The Kansas Supreme Court reversed the dismissal because there had been no judicial determination of comparative fault in the second action. 242 Kan. at 794. It held:

> "After an adjudication of comparative fault, no party should be afforded a second opportunity to litigate percentages of causal negligence. K.S.A. 60-258a certainly contemplates one action in which comparative fault is determined. However, it was never the intent of the legislature or this court to place form over substance and preclude a plaintiff from proceeding against a tortfeasor when there has been no judicial determination of comparative fault." 242 Kan. at 794.

In *Anderson*, as in *Mathis*, there had never been a comparison of the defendants' fault at trial. *Anderson*, 242 Kan. at 866.

9

*Anderson* does not support Plaintiffs' argument. Nothing in the *Anderson* holding gives Plaintiffs the power to relitigate Terry's fault. Furthermore, even if there had not been a judicial determination of comparative fault at the Deere trial it is incorrect to suggest that it was not feasible for Plaintiffs to sue Terry in the same action as Deere. Plaintiffs made a strategic move in choosing to settle with Terry. It is not a case like *Anderson* where the defendants prevented the plaintiff from suing all tortfeasors in the same action. *Anderson*'s discussion of *Greenwood* shows that the courts will not give plaintiffs a second chance to litigate fault if plaintiffs' own strategic choices expose them to the risk of not recovering from a liable tortfeasor. *Anderson*, 242 Kan. at 863-65.

A similar situation arose in *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981). There, Glynn Albertson was driving a Volkswagen van and collided with a vehicle operated by Vernon Travis. Albertson sued Travis in state court, and a jury determined that Travis was 60% liable and Albertson was 40% liable. Then, Albertson tried to sue Volkswagen in federal court. The federal court asked the Kansas Supreme Court to decide whether the suit could proceed. The Kansas Supreme Court held:

> "The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by that decision. Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability." 230 Kan. at 374.

Here, as in *Albertson*, Plaintiffs made a strategic choice when they settled with Terry. They cannot use their strategic choice as a reason to evade application of the one-action rule.

Plaintiffs also rely on *Childs v. Williams*, 243 Kan. 441, 757 P.2d 302 (1988). There, 12-year-old Rachelle Childs was a passenger in a car driven by Michael Wesson. The car collided with a car driven by Kristine Williams. Childs' mother negotiated a settlement with Wesson. Because Childs was a minor, her mother had to file suit against Wesson to complete the settlement. The district court approved the settlement. The district court did not make a determination of comparative fault. The following week, Childs' mother filed suit against Williams. The district court dismissed the suit on the basis of the one-action rule. The Kansas Supreme Court reversed. 243 Kan. at 443. It framed the issue as determining "what rights a plaintiff retains where all tortfeasors are not joined in a friendly suit approving a settlement but making no determination of fault." 243 Kan. at 442. The court relied on *Mathis* in making its holding, explaining:

> "We held in *Mathis* that each plaintiff must be allowed a trial judicially determining comparative fault, regardless of whether the plaintiff had the opportunity to do so earlier in one action. In *Anderson v. Scheffler*, 242 Kan. 857, 866, 752 P.2d 667 (1988), we acknowledged that, under *Mathis*, a plaintiff is not barred from bringing further suits against additional defendants concerning the same cause of action until it has actually received a *comparison of fault* at trial." 243 Kan. at 443.

Plaintiffs argue that what happened in *Williams* is "exactly what happened in the Phillips case." But, there is a major distinguishing factor. In *Williams*, there was not a determination of fault before Childs brought the second action. Childs was entitled to a "trial judicially determining comparative fault, regardless of whether the plaintiff had the opportunity to do so earlier in one action." 243 Kan. at 443. Here, Plaintiffs have already received their trial judicially determining comparative fault, and the one-action rule prevents them from getting another.

This case is more akin to *Mick*, 244 Kan. 81. Douglas Mick was injured while working on a drilling rig. He filed two lawsuits on the same day. One was a products liability action filed in Rooks County against Bethlehem Steel Corporation and others for

11

causing the oilfield accident. The other was against Dr. Mani M. Mani, who performed reconstructive surgery on Mick. Eventually, all defendants other than Bethlehem Steel were dismissed from the Rooks County action. A jury found no fault on the part of Bethlehem Steel. It did not compare Dr. Mani's fault. Following the Rooks County trial, Dr. Mani filed a motion for summary judgment on the basis of the one-action rule. The district court granted summary judgment to Dr. Mani, and the Kansas Supreme Court affirmed. 244 Kan. at 95. The court concluded that "under the most recent comparative fault cases, namely *Mathis*, *Anderson*, and *Childs*, a plaintiff may pursue separate actions against tortfeasors where there has been no judicial determination of comparative fault. Thus, the exceptions to the one-action rule arise when there has been no prior judicial determination of fault." 244 Kan. at 93. In response to Mick's characterization of "Mani's action as lying in wait for the unwary," the court said that "[p]laintiff's counsel should have been alert to the risk he was taking as a part of his strategy to separate the defendants." 244 Kan. at 94. Here, Plaintiffs' counsel should have also been aware of the risks of obtaining a consent judgment against Terry.

The district court did not err in refusing to grant Plaintiffs a second consent judgment hearing. A jury in Plaintiffs' case against Deere found that Terry was not liable for Doug's death. The one-action rule prohibits Plaintiffs from relitigating Terry's liability because there has already been a judicial determination of comparative fault. As this court stated in Plaintiffs' first appeal, Plaintiffs must be able to establish Terry's fault and liability in order to make a prima facie case that their consent judgment is reasonable. *Phillips*, 2013 WL 1444259, at *9. Plaintiffs cannot show that Terry is liable, so their consent judgment cannot be approved. Thus, the district court did not err by refusing to grant Plaintiffs the opportunity to execute a second consent judgment.

Affirmed.